# EXHIBIT A

All Law Division This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906rtSelecTab/12
Remote Court date: 6/8/2023 9:00 AM

FILED DATE: 4/5/2023 5:51 PM    2023L003355

| CIRCUIT COURT | SUMMONS | FILED 4/5/2023 5:51 PM IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL 2023L003355 Calendar, E 22173511 |
|---|---|---|

____Cook____ **COUNTY**

| Instructions ▼ | | |
|---|---|---|
| Enter above the county name where the case was filed. | PEOPLE OF THE STATE OF ILLINOIS, et al. **Plaintiff / Petitioner** (First, middle, last name) | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | 3M COMPANY, et al. **Defendant / Respondent** (First, middle, last name) | **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) | |

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. <br><br> E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org. <br><br> Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. <br><br> If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | | |
|---|---|---|
| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:** | |
| | a. Defendant/Respondent's primary address/information for service: | |
| | Name *(First, Middle, Last):* 3M Company | |
| | Registered Agent's name, if any: Illinois Corporation Service Company | |
| | Street Address, Unit #: 801 Adlai Stevenson Drive | |
| | City, State, ZIP: Springfield, Illinois 62703 | |
| | Telephone: _____ Email: _____ | |
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here: | |
| | Name *(First, Middle, Last):* _____ | |
| | Street Address, Unit #: _____ | |
| | City, State, ZIP: _____ | |
| | Telephone: _____ Email: _____ | |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent: | |
| | ☐ Sheriff    ☐ Sheriff outside Illinois: _____ *County & State* | |
| | ☑ Special process server    ☐ Licensed private detective | |

Enter the Case Number given by the Circuit Clerk:_____

FILED DATE: 4/5/2023 5:51 PM    2023L003355

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:** Amount claimed:  $_____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:** Name *(First, Middle, Last):*  Daniel R. Flynn Street Address, Unit #:  Ten North Dearborn Street, Sixth Floor City, State, ZIP:  Chicago, Illinois 60602 Telephone:  (312) 214-7900    Email:  dflynn@dicellolevitt.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

**4.** **Instructions for person receiving this *Summons* (Defendant):**

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | ☑ **a.** To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at: Address:  50 West Washington Street City, State, ZIP:  Chicago, Illinois 60602 |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ **b.** Attend court: On: _____ at _____ ☐ a.m. ☐ p.m. in _____ _____*Date*_____  ____*Time*____                      _____*Courtroom*_____ **In-person at:** |
| In **4b**, fill out: • The court date and time the clerk gave you. • The courtroom and address of the court building. • The call-in or video information for remote appearances (if applicable). • The clerk's phone number and website. All of this information is available from the Circuit Clerk. | _____ *Courthouse Address*    *City*                *State*    *ZIP* OR **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"): By telephone: _____ *Call-in number for telephone remote appearance* By video conference: _____ *Video conference website* _____ *Video conference log-in information (meeting ID, password, etc.)* Call the Circuit Clerk at: _____ or visit their website *Circuit Clerk's phone number* at: _____ to find out more about how to do this. *Website* |

4/5/2023 5:51 PM IRIS Y. MARTINEZ

| | | |
|---|---|---|
| **STOP!** The Circuit Clerk will fill in this section. | **Witness this Date:** _____ | *Seal of Court* |
| **STOP!** The officer or process server will fill in the Date of Service. | **Clerk of the Court:** _____ **This *Summons* must be served within 30 days of the witness date.** Date of Service:  April 17, 2023 *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

FILED DATE: 4/5/2023 5:51 PM    2023L003355

| STATE OF ILLINOIS, CIRCUIT COURT _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | PEOPLE OF THE STATE OF ILLINOIS, et al. _____ **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. 3M COMPANY, et al. _____ **Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | _____ **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
          *First, Middle, Last*

☑ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

3 M Company _____ **as follows:**
*First, Middle, Last*

☐  Personally on the Defendant/Respondent:
   Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
   On this date: _____  at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____

☐  On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
   member or lives there:
   On this date: _____  at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____
   And left it with: _____
                    *First, Middle, Last*
   Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
   and by sending a copy to this defendant in a postage-paid, sealed envelope to the
   above address on _____ , 20 _____ .

☑  On the Corporation's agent, _____
                              *First, Middle, Last*
   Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
   On this date: 4-17-23  at this time: 2:30 ☐ a.m. ☑ p.m.
   Address: 801 S16 VINSON
   City, State, ZIP: SPRINGFIELD, IL 6

Enter the Case Number given by the Circuit Clerk: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:** _____

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | *Signature by:* ☐ Sheriff ☐ Sheriff outside Illinois: |

**FEES**
Service and Return:  $ _____
Miles _____  $ _____
Total  $ 0.00 _____

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 4/5/2023 5:51 PM   2023L003355

All Law Division initial Case Management Dates will be heard via ZOOM.
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906_SelectTab/12
Remote Court date: 6/8/2023 9:00 AM

FILED
4/5/2023 5:51 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L003355
Calendar, E
22173511

FILED DATE: 4/5/2023 5:51 PM    2023L003355

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

PEOPLE OF THE STATE OF ILLINOIS,
*ex rel.* KWAME RAOUL, Attorney General of the
State of Illinois,

               Plaintiff,

      v.

3M COMPANY, E.I DU PONT DE NEMOURS AND
COMPANY; THE CHEMOURS COMPANY FC LLC
f/k/a The Chemours Company; DUPONT DE
NEMOURS, INC.; DOWDUPONT, INC.;
CORTEVA, INC.; CHEMGUARD, INC.; TYCO
FIRE PRODUCTS LP; BUCKEYE FIRE
EQUIPMENT COMPANY; KIDDE-FENWAL, INC.;
NATIONAL FOAM, INC.; ARKEMA, INC.; AGC
CHEMICALS AMERICAS, INC.; DYNAX
CORPORATION; CLARIANT CORPORATION;
UTC FIRE & SECURITY AMERICAS
CORPORATION, INC.; CARRIER GLOBAL
CORPORATION; ARCHROMA US, INC.;
AMEREX CORPORATION; HONEYWELL
INTERNATIONAL, INC.; KIDDE PLC, INC.;
RAYTHEON TECHNOLOGIES CORPORATION;
CHEMDESIGN PRODUCTS, INC.; DEEPWATER
CHEMICALS, INC.; ANGUS FIRE ARMOUR
CORPORATION; ROYAL CHEMICAL COMPANY;
FIRE SERVICES PLUS, INC.; NATION FORD
CHEMICAL COMPANY; CHUBB FIRE LTD;
DAIKIN AMERICA, INC., DYNEON, LLC; MINE
SAETY APPLIANCES COMPANY, LLC;
PERIMETER SOLUTIONS, LP; VERDE
ENVIRONMENTAL, INC.; and HONEYWELL
SAFETY PRODUCTS US, INC.

               Defendants.

## **COMPLAINT**

Plaintiff, People of the State of Illinois, *ex rel.* Kwame Raoul, Attorney General of the State

of Illinois ("People" or the "State"), seeks to hold the manufacturers of aqueous film-forming foam

("AFFF") accountable for their culpable conduct that resulted in AFFF Contamination, as

FILED DATE: 4/5/2023 5:51 PM    2023L003355

described herein, of the State's environment and natural resources. Plaintiffs seek to (1) recover natural resource damages and other monetary damages necessary for Illinois to continue identifying, monitoring, and remediating, where appropriate, contamination to Illinois' environment and natural resources from AFFF; (2) obtain injunctive relief requiring Defendants to take action to prevent ongoing contamination, remediate the areas contaminated, and restore resources injured or impacted by AFFF in the State of Illinois; (3) recover civil penalties for violations of Illinois statutes and regulations resulting from the AFFF Contamination described herein; and (4) obtain any other equitable relief as appropriate.

## INTRODUCTION AND NATURE OF THE ACTION

1.      With a population of approximately 12.67 million people, Illinois is the sixth-largest state, by population, in the United States.

2.      Illinois is one of four states that border Lake Michigan.

3.      Lake Michigan is the second largest of the five Great Lakes by volume and the largest lake entirely within the United States.

4.      The Mahomet Aquifer, one of the largest aquifers in the United States, is located entirely within Illinois.

5.      Nearly the entirety of Illinois' western boundary is the Mississippi River, with the few exceptions being where the Mississippi River has changed course over time.

6.      The Mississippi River watershed is the fourth largest in the world, with an area of approximately 1.2 million square miles.

7.      Illinois has established itself as a leader in protecting the environment and in identifying, monitoring, and addressing contamination caused by per- and polyfluoroalkyl substances ("PFAS") in Illinois.

2

FILED DATE: 4/5/2023 5:51 PM   2023L003355

8.     The Illinois Environmental Protection Agency ("Illinois EPA") is an administrative agency of the State of Illinois, created pursuant to Section 4 of the Illinois Environmental Protection Act ("Act"), 415 ILCS 5/4 (2020), and charged, *inter alia*, with the duty of enforcing the Act.

9.     The Illinois Department of Natural Resources ("IDNR") is an administrative agency of the State of Illinois, created by Section 1-5 of the Illinois Department of Natural Resources Act ("IDNR Act"), 20 ILCS 801/1-5 (2020), and charged, *inter alia*, with the duty of enforcing the Fish and Aquatic Life Code ("Fish Code"), 515 ILCS 5/5-5 (2020), and the Wildlife Code ("Wildlife Code"), 520 ILCS 5/1-10 (2020).

10.     The Illinois EPA and IDNR are Co-Trustees of the State of Illinois' Natural Resources.

11.     The ownership of and title to all wild birds and wild mammals within the jurisdiction of the State of Illinois is declared to be in the State of Illinois. 520 ILCS 5/2.1 (2020).

12.     The ownership of and title to all aquatic life within the boundaries of the State of Illinois is declared to be in the State of Illinois. 515 ILCS 5/5-5 (2020).

13.     AFFF is a fire suppressing foam used to extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, hangar fires, ship fires, vehicle fires, and chemical fires.

14.     When AFFF concentrate is mixed with water and ejected from a nozzle, it coats the fire, blocking the supply of oxygen feeding the fire, creating a cooling effect, and smothering the fire after the foam has dissipated.

15.     AFFF is, and has been historically, used at certain industrial facilities, military bases, airports, and by fire departments.

3

FILED DATE: 4/5/2023 5:51 PM     2023L003355

16.     AFFF is manufactured with fluorosurfactants which are synthetic additives that provide "fuel repellency, heat stability, and the required low surface tension and positive spreading coefficient that enables formation of an aqueous film on the surface of hydrocarbon fuels."[1]

17.     The active ingredients within fluorosurfactants are PFAS.

18.     For purposes of this Complaint, "AFFF" shall mean fluorinated Class B firefighting foam that contains PFAS, including all their salts and ionic states as well as the acid forms of molecules, and/or their chemical precursors.

19.     For purposes of this Complaint, "AFFF Contamination" shall mean any PFAS contamination resulting from the manufacture, storage, sale, distribution, marketing, or usage of AFFF.

20.     For purposes of this Complaint, "PFAS" shall mean the PFAS associated with the manufacture, storage, sale, distribution, marketing, or usage of AFFF including but not limited to perfluorooctanesulfonic acid ("PFOS"), perfluorooctanoic acid ("PFOA"), perfluorononanoic acid ("PFNA"), and/or perfluorohexanesulfonic acid ("PFHxS"), and their precursors.

21.     This matter does *not* involve any PFAS contamination at issue in the matter of *People v. 3M*, No. 22-cv-4075 pending in the Central District of Illinois, Rock Island County or any PFAS contamination at issue in the matter of *People v. 3M Company, et al.,* No. 1:23-cv-01341 pending in the Northern District of Illinois.  Plaintiff has identified different contamination at distinct sites in each action.  The contamination and sites at issue in this Complaint do not overlap with the contamination and sites at issue in the other two causes of action.

22.     Defendants comprise the limited number of companies that have manufactured, marketed, sold, and/or distributed AFFF and fluorosurfactants used in AFFF.

---

[1] *Best Practice Guidance for Use of Class B Fire Fighting Foams,* THE FIRE FIGHTING FOAM COALITION, https://www.fffc.org/_files/ugd/331cad_188bf72c523c46adac082278ac019a7b.pdf (May 2016).

FILED DATE: 4/5/2023 5:51 PM   2023L003355

23.     PFOS and PFOA are byproducts of historic and some Modern AFFF.[2]

24.     As of the date of the filing of this Complaint, a website sponsored by Defendant 3M asserts that "the weight of scientific evidence does not show that PFOS or PFOA causes harm to the environment or people at current or historical levels."[3]

25.     As of the date of the filing of this Complaint, a website sponsored by Defendant Chemours asserts that "[f]luoropolymers do not pose a significant risk to human health or the environment when used for their intended purpose."[4]

26.     As of the date of the filing of this Complaint, a website sponsored by Defendant Daikin asserts that "Daikin uses/produces PFAS which have been reviewed/approved by health and safety agencies such as the US Environmental Protection Agency (EPA) and the US Food & Drug Administration."[5]

27.     Contrary to Defendants' assertions, the U.S. Environmental Protection Agency ("U.S. EPA") has concluded that human epidemiology data identifies associations between certain PFAS exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney).

28.     Modern AFFF contains shorter chain fluorosurfactants and is often referred to as "C6 foam" or "C6 AFFF".

---

[2] For purposes of this Complaint "Modern AFFF" refers to all AFFF manufactured with shorter chain PFAS, including but not limited to PFHxA, and without intentional PFOA or PFOS additives.
[3] *The Facts on PFAS*, PFAS FACTS, https://www.pfasfacts.com/ (last visited Apr. 5, 2023).
[4] *Chemours Commitment to Responsible Chemistry*, CHEMOURS https://www.chemours.com/en/corporate-responsibility/sustainability-safety/our-commitment-to-pfas-stewardship#:~:text=Fluoropolymers%20do%20not%20pose%20a,environment%20and%20do%20not%20degrade (last visited Apr. 5, 2023).
[5] *Measures Concerning Environmental Emissions of PFAS*, DAIKIN, https://www.daikinchemicals.com/company/sustainability/pfas.html (last visited Apr. 5, 2023).

FILED DATE: 4/5/2023 5:51 PM     2023L003355

29.     As of the date of filing this complaint, the American Chemistry Council, an organization of which many Defendants are members, asserts that "studies have found that one of the primary potential breakdown products [of modern AFFF], perfluorohexanoic acid (PFHxA or C6 acid), does not cause cancer . . . does not disrupt endocrine (hormone) activity . . . does not cause reproductive or developmental harm . . . does not build up in the human body and does not become concentrated in the bodies of living organisms.[6]

30.     Many Defendants market Modern AFFF as an effective, environmentally conscious alternative to historic AFFF.

31.     Contrary to the American Chemistry Council's assertion, multiple agencies, including U.S. EPA and Illinois EPA, have found evidence that PFHxA can be bioaccumulative in living organisms and poses several human health impacts, including hepatic, developmental, and hematopoietic effects in humans.[7]

32.     Contrary to the American Chemistry Council's assertions, Modern AFFF still contains persistent, bioaccumulative fluorosurfactants and continues to pose a risk of AFFF contamination.[8]

33.     Defendants have manufactured, sold, and/or distributed AFFF and fluorosurfactants used in the manufacture of AFFF, which were sold and distributed into the State

---

[6] *Facts about C6 Fluorotelemers,* THE AMERICAN CHEMISTRY COUNCIL, https://www.americanchemistry.com/industry-groups/alliance-for-telomer-chemistry-stewardship-atcs/facts-about-c6-fluorotelomers (last visited Apr. 5, 2023).

[7] *Health Advisory for Perfluorohexanoic Acid (PFHxA),* IL. ENV'T PROT. AGENCY, (Jan. 28, 2021) https://epa.illinois.gov/content/dam/soi/en/web/epa/topics/water-quality/pfas/documents/ha-pfhxa.pdf; *see also IRIS Toxicological Review of Perfluorohexanoic Acid (PFHxA) and Related Salts (External Review Draft),* U.S. ENV'T PROT. AGENCY, (Feb. 2022) https://cfpub.epa.gov/si/si_public_record_report.cfm?Lab=CPHEA&dirEntryId=352650.

[8] *Replacement of Fluorinated Aqueous Fire-Fighting Foams (AFFF),* Barrett, W., U.S. ENV'T PROT. AGENCY, https://cfpub.epa.gov/si/si_public_record_report.cfm?Lab=CESER&dirEntryId=355016, (last revised Jun. 21, 2022); *see also Fire Fighting Foams,* INTERSTATE TECHNOLOGY REGULATORY COUNCIL, https://pfas-1.itrcweb.org/3-firefighting-foams/#3_8, (last revised Jun. 2022).

FILED DATE: 4/5/2023 5:51 PM    2023L003355

of Illinois for use as fire suppressants. By manufacturing, marketing, selling, and distributing AFFF and fluorosurfactants used in the manufacture of AFFF throughout Illinois while misleading the public about their toxic properties, Defendants have caused widespread AFFF Contamination at levels that exceed applicable Illinois Health Advisories (which contain health-based guidance levels for PFAS) and injuries to Illinois' natural resources.

34.    Article XI of the Illinois Constitution, , provides that, "[e]ach person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law." IL. CONST. ART. XI, § 2

35.    The People bring this action against Defendants pursuant to Illinois' common laws of negligence, trespass, public nuisance, unjust enrichment, strict products liability, and civil conspiracy, as well as the Illinois Department of Natural Resources Act ("DNR Act") 20 ILCS 801/1 *et seq.* (2020); the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.* (2020); and the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* (2020).

## PARTIES

**Plaintiff.**

36.    Plaintiff is the People of the State of Illinois, *ex rel.* Kwame Raoul, Attorney General of the State of Illinois.

37.    The State maintains principal offices at 500 South Second Street Springfield, Illinois 62701 and 100 West Randolph Street, Chicago, Illinois 60601.

38.    The Attorney General is the chief legal officer of the State of Illinois, having the powers and duties prescribed by law in IL. CONST. ART. V, § 15.

7

FILED DATE: 4/5/2023 5:51 PM   2023L003356

39.     The Attorney General has statutory and common law authority to appear on behalf of the People of the State of Illinois in all cases in which the State or the People of the State are interested. *See, e.g.*, 15 ILCS 205/4 (2020); *People ex rel. Scott v. Briceland*, 65 Ill. 2d 485, 494 (1976).

40.     The "Attorney General has an obligation to represent the interests of the People so as to ensure a healthful environment for all the citizens of the State." *People v. NL Indus.*, 152 Ill. 2d 82, 103 (1992), *opinion modified on denial of reh'g* (Nov. 30, 1992).

41.     The Illinois Attorney General is "the only officer empowered to represent the State in litigation in which it is the real party in interest." *Fuchs v. Bidwill*, 65 Ill. 2d 503, 510 (1976).

42.     The Illinois Attorney General has *parens patriae* power to represent the interests of the People so as to protect the State's natural resources and ensure a healthful environment for all the residents of the State.

43.     The State of Illinois has a quasi-sovereign interest in and obligations as public trustee to protect its natural resources, including air, soils, and lands, aquatic and submerged lands, waters, aquifers, wildlife, fish, shellfish, biota, and other natural resources. The State further has a proprietary interest in protecting all property owned by the State and has an interest in remediating the contamination of its property and preventing future contamination.

44.     The Illinois Attorney General is authorized to enforce the Consumer Fraud Act, 815 ILCS 505/7(a).

**Defendants.**

45.     Defendants are companies that caused and/or contributed to AFFF Contamination to Illinois' environment and natural resources.

8

FILED DATE: 4/5/2023 5:51 PM     2023L003356

46.     Defendant 3M Company ("3M") is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota 55144.

47.     3M is registered to do business in Illinois and may be served with process through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

48.     3M manufactured, sold, marketed, and distributed AFFF and fluorosurfactants used in the manufacture of AFFF throughout the State of Illinois.

49.     3M conducts business throughout the United States, including in the State of Illinois.

50.     Upon information and belief, AFFF or fluorosurfactants used in the manufacture of AFFF manufactured by 3M has contaminated Illinois' environment and natural resources.

51.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal place of business located at 5435 77 Center Drive, # 10, Charlotte, North Carolina 28217.

52.     Archroma may be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

53.     Archroma does business throughout the United States, including conducting business in Illinois.

54.     Archroma manufactured, sold, marketed, and/or distributed AFFF and/or fluorosurfactants used to manufacture AFFF throughout the United States, including Illinois.

55.     Upon information and belief, AFFF and/or fluorosurfactants used to manufacture AFFF manufactured, sold, marketed, and/or distributed by Archroma contaminated the environment and natural resources in Illinois.

56.     Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406.

57.     Arkema is registered to do business in Illinois and may be served with process through its registered agent, Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

58.     Arkema manufactured, sold, and/or distributed AFFF or fluorosurfactants intended to be used in the manufacture of AFFF.

59.     Arkema conducts business throughout the United States, including in the State Illinois.

60.     Arkema is a successor in interest to Atochem North American, Inc., Elf Atochem North America, Inc., and Atofina Chemicals, Inc.

61.     Upon information and belief, AFFF or fluorosurfactants used in the manufacture of AFFF manufactured, sold, marketed, and/or distributed by Arkema have contaminated Illinois' environment and natural resources.

62.     Defendant AGC Chemicals Americas, Inc. f/k/a Asahi Glass Fluoropolymers USA, Inc. and AGA Chemicals, Inc. ("AGCCA"), is a Delaware corporation with its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341.

63.     AGCCA is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

64.     AGCCA conducts business throughout the United States, including in the State Illinois.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

FILED DATE: 4/5/2023 5:51 PM   2023L003355

65.     AGCCA manufactured, sold, and/or distributed AFFF or fluorosurfactants used in the manufacture of AFFF throughout Illinois.

66.     Upon information and belief, AFFF and/or fluorosurfactants used in the manufacture of AFFF manufactured, sold, marketed, and/or distributed by AGCCA has contaminated Illinois' environment and natural resources.

67.     Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 500 East Morehead Street, Suite 400, Charlotte, North Carolina 28202.

68.     Clariant may be served with process through its registered agent, Corporation Service Company, at 80 State Street, Albany, New York 12207.

69.     Clariant conducts business throughout the United States, including in the State of Illinois.

70.     Clariant manufactured, sold, and/or distributed AFFF and/or fluorosurfactants used in the manufacture of AFFF throughout Illinois.

71.     Upon information and belief, AFFF and/or fluorosurfactants used in the manufacture of AFFF manufactured, sold, marketed, or distributed by Clariant have contaminated Illinois' environment and natural resources.

72.     Defendant E.I. du Pont de Nemours and Company ("Historical DuPont") is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

73.     Historical DuPont is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

74.    Historical DuPont conducts or has conducted business throughout the United States, including in the State of Illinois.

75.    Historical DuPont manufactured, sold, and/or distributed AFFF and/or fluorosurfactants used in the manufacture of AFFF throughout Illinois.

76.    Defendant The Chemours Company is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.

77.    The Chemours Company was incorporated as a subsidiary of Historical DuPont as of April 30, 2015.

78.    From April 30, 2015 until July 2015, The Chemours Company was a wholly owned subsidiary of Historical DuPont.

79.    The Chemours Company is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

80.    In July 2015, Historical DuPont spun off The Chemours Company and transferred to The Chemours Company its "performance chemicals" business line, which includes its fluoroproducts business, and distributed shares of The Chemours Company stock to Historical DuPont stockholders.

81.    The Chemours Company has since been an independent, publicly traded company.

82.    The Chemours Company conducts business throughout the United States, including in the State of Illinois.

83.    The Chemours Company manufactured, sold, marketed, and/or distributed AFFF and/or fluorosurfactants used in the manufacture of AFFF throughout Illinois.

84.     Upon information and belief, AFFF and/or fluorosurfactants used in the manufacture of AFFF manufactured, sold, marketed, and/or distributed by The Chemours Company has contaminated Illinois' environment and natural resources.

85.     Defendant The Chemours Company FC, LLC is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.

86.     The Chemours Company FC, LLC is registered to do business in Illinois and may be served with process through its registered agent CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

87.     The Chemours Company FC, LLC conducts business throughout the United States, including in the State of Illinois.

88.     The Chemours Company FC, LLC operates as a subsidiary of The Chemours Company and manufactures fluoropolymer resins.

89.     The Chemours Company and The Chemours Company FC, LLC are collectively referred to throughout this Complaint as "Chemours."

90.     The Chemours Company FC, LLC manufactured, sold, marketed, and distributed AFFF and fluorosurfactants used in the manufacture of AFFF throughout the State of Illinois.

91.     Upon information and belief, AFFF or fluorosurfactants used in the manufacture of AFFF manufactured by The Chemours Company FC, LLC has contaminated Illinois' environment and natural resources.

92.     Defendant DowDuPont, Inc. ("DowDuPont") is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

93.     DowDuPont conducted business throughout the United States, including in Illinois.

13

FILED DATE: 4/5/2023 5:51 PM    2023L003355

94.    Historical DuPont merged with The Dow Chemical Company in August 2017 to create DowDuPont.

95.    Historical DuPont and The Dow Chemical Company each merged with wholly owned subsidiaries of DowDuPont and, as a result, became subsidiaries of DowDuPont. Since the time of the merger, DowDuPont has created a series of separation transactions to separate its businesses into three independent, publicly-traded companies for each of its agriculture, materials science, and specialty products businesses, discussed herein.

96.    Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

97.    Corteva was initially formed in February 2018.

98.    From February 2018 until June 1, 2019, Corteva was a wholly owned subsidiary of DowDuPont.

99.    On June 1, 2019, DowDuPont separated its agriculture business by spinning it off into Corteva.

100.    On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a *pro rata* dividend.

101.    Following the June 1, 2019, stock distribution, Corteva became (and remains) the direct parent of Historical DuPont and holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

102.    Corteva is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

103.    Corteva, Inc. conducts business throughout the United States, including in the State of Illinois.

104.    On June 1, 2019, DowDuPont, the surviving entity after the spinoff of Corteva and of another entity known as Dow Inc., changed its name to DuPont de Nemours, Inc.

105.    DuPont de Nemours, Inc. retained assets in the specialty products business lines following the above-described spinoffs, as well as the balance of the financial assets and liabilities of Historical DuPont not assumed by Corteva, Inc.

106.    Defendant DuPont de Nemours, Inc. (f/k/a DowDuPont Inc.) ("New DuPont") is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

107.    Historical DuPont, Chemours, Corteva, and New DuPont are collectively referred to as "DuPont" throughout this Complaint.

108.    New DuPont may be served with process through its registered agent, the Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

109.    New DuPont conducts business throughout the United States, including in the State of Illinois.

110.    DuPont conducts business throughout the United States, including at multiple locations in the State of Illinois.

111.    DuPont manufactured, sold, marketed, and/or distributed AFFF and/or fluorosurfactants used in the manufacture of AFFF throughout Illinois.

15

FILED DATE: 4/5/2023 5:51 PM     2023L003355

112. Upon information and belief, AFFF and/or fluorosurfactants used in the manufacture of AFFF manufactured, soled, marketed, and/or distributed by DuPont have contaminated Illinois' environment and natural resources.

113. Defendant Daikin America, Inc. ("Daikin") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 20 Olympic Drive, Orangeburg, New York, 10962.

114. Daikin can be served with process thought its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

115. Daikin conducts business throughout the United States, including in Illinois.

116. Daikin manufactured, sold, marketed, and/or distributed AFFF or fluorosurfactants used in the manufacture of AFFF throughout the United States, including in Illinois.

117. Upon information and belief, AFFF or fluorosurfactants used for the manufacture of AFFF manufactured, sold, marketed, or distributed by Daikin has contaminated Illinois' environment and natural resources.

118. Defendant Dyneon L.L.C. ("Dyneon") was a limited liability company organized under the laws of the State of Delaware with a principal place of business located at 3M Center Building 224-5N-40 St. Paul, Minnesota, 55144.

119. Dyneon withdrew its business registration with the Illinois Secretary of State on November 28, 2011.

120. Dyneon's last known registered agent in Illinois was, CT Corporation located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

121.    Pursuant to 805 ILCS 5/5.25, Dyneon may be served with process through the Illinois Secretary of State's Department of Business Services located at 501 South Second Street, Room 350, Springfield, Illinois 62756.

122.    After serving the Illinois Secretary of State with process for Dyneon, the State may transmit effectuated service to 3M Company, Dyneon's successor in interest, via certified mail.

123.    Dyneon did business throughout the United States, including conducting business in Illinois.

124.    Dyneon was a wholly owned subsidiary of 3M Company.

125.    Dyneon manufactured, sold, marketed, and/or distributed AFFF or fluorosurfactants used in the manufacture of AFFF throughout the United States, including in Illinois.

126.    According to 3M, Dyneon was, at one point, one of the "world's leading fluoropolymer producers."[9]

127.    Upon information and belief, AFFF or fluorosurfactants used in the manufacture of AFFF manufactured, sold, marketed, and/or distributed by Dyneon contaminated Illinois' environment and natural resources.

128.    Defendant Mine Safety Appliances Company, LLC ("Mine Safety") is a Pennsylvania limited liability company with a principal place of business located at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.

129.    Mine Safety may be served through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814 Chicago, Illinois 60604.

---

[9] *Dyneon to Acquire Empore Solid Phase Extraction Family of Products,* 3M COMPANY, (Jan. 5, 2007), https://news.3m.com/2007-01-05-Dyneon-to-Acquire-Empore-Solid-Phase-Extraction-Family-of-Products.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

130.    Mine Safety does business throughout the United States, including conducting business throughout Illinois.

131.    Mine Safety manufactured, sold, or distributed AFFF throughout the United States, including in Illinois.

132.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Mine Safety contaminated Illinois' environment and natural resources.

133.    Defendant Noble Industrial Supply Corporation, ("Noble") is a corporation organized and existing under the laws of New York, with its principal place of business at 45 Middle Neck Road #4, Great Neck, New York 11021.

134.    Noble can be served with process through its registered agent, Fine & Bassik, Esqs., at 216 Great Neck Road, Great Neck, New York, 11021.

135.    Noble does business throughout the United States, including conducting business throughout Illinois.

136.    Noble manufactured, sold, or distributed AFFF throughout the United States, including in Illinois.

137.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Noble contaminated Illinois' environment and natural resources.

138.    Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 1400 Pennbrook Parkway, Landsdale, PA 19446.

139.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to Ansul Company, having acquired Ansul Company in 1990 (collectively "Tyco/Ansul").

FILED DATE: 4/5/2023 5:51 PM     2023L003355

140.     Tyco may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801. .

141.     Tyco/Ansul manufactures the Ansul brand of products, including Ansul brand AFFF.

142.     Tyco does business throughout the United States, including conducting business in Illinois.

143.     Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Tyco has contaminated Illinois' environment and natural resources.

144.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin, 54143-2542.

145.     Chemguard is a division of Tyco.

146.     Chemguard may be served with process through its registered agent, The Prentice-Hall Corporation System, Inc., at 251 Little Falls Drive, Wilmington, Delaware 19808.

147.     Chemguard conducted business throughout the United States, including in Illinois.

148.     Chemguard manufactured, sold, marketed, and/or distributed AFFF throughout Illinois.

149.     In 2003, Chemguard acquired the Ciba-Geigy Corporation's fluorosurfactants business.

150.     Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Chemguard contaminated Illinois' environment and natural resources.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

151.    Defendant Chubb Fire Ltd. ("Chubb") is a private United Kingdom company, with a registration number 134210, and has offices at Little Road, Ashford, Middlesex, United Kingdom.

152.    Upon information and belief, Chubb is or has been composed of different subsidiaries and/or division including, but not limited to, Chubb Fire & Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

153.    Chubb does business throughout the United States, including conducting business in Illinois.

154.    Chubb manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including in Illinois.

155.    Upon information and belief, AFFF manufactured, sold, or distributed by Chubb has contaminated Illinois' environment and natural resources.

156.    Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized and existing under the laws of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut, 06101.

157.    Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.).

158.    Kidde-Fenwal is registered to do business in Illinois and may be served with process through its registered agent, United Agent Group, Inc., at 350 South Northwest Highway, Suite 300, Park Ridge, Illinois 60068.

159.    Kidde-Fenwal does business throughout the United States, including conducting business in Illinois.

160.    Kidde-Fenwal manufactured, sold, marketed, and/or distributed AFFF throughout Illinois.

161.    Upon information and belief, AFFF manufactured by Kidde-Fenwal has contaminated Illinois' environment and natural resources.

162.    Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Spring Road, Farmington, Connecticut, 06032.

163.    Kidde PLC was part of UTC Fire & Security Americas Corporation, Inc.

164.    Kidde PLC is registered to do business in Illinois and may be served with service of process through its registered agent, United States Corporation Co, at 33 North LaSalle Street, Chicago, Illinois 60602.

165.    Kidde PLC does business throughout the United States, including conducting business in Illinois.

166.    Kidde PLC manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including in Illinois.

167.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Kidde PLC has contaminated Illinois' environment and natural resources.

168.    Upon information and belief, Kidde PLC was acquired by United Technologies Corporation in or around 2005.

169.    Upon information and belief, Kidde-Fenwal became part of the UTC Control & Security unit of United Technologies Corporation.

170.    Defendant Raytheon Technologies Corporation is a corporation organized and existing under the laws of Delaware, with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

171. Raytheon is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois, 60604.

172. Raytheon conducts business throughout the United States, including throughout Illinois.

173. Upon information and belief, United Technologies Corporation merged with Raytheon Company to form Raytheon Technologies in or around April 2020.

174. Raytheon was formerly known as United Technologies Corporation until in or around April 2020.

175. Raytheon manufactured, sold, marketed, and/or distributed AFFF throughout the State of Illinois.

176. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Raytheon contaminated the environment and natural resources in Illinois.

177. Defendant UTC Fire & Security Americas Corporation, Inc ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

178. Upon information and belief, UTC was a division of United Technologies Corporation.

179. UTC is registered to do business in Illinois and may be served through its registered agent, CT Corporation System, at 208 South LaSalle, Suite 814, Chicago, Illinois 60604.

180. UTC manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including Illinois.

22

FILED DATE: 4/5/2023 5:51 PM     2023L003355

181.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by UTC has contaminated Illinois' environment and natural resources.

182.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33417.

183.    Carrier may be served with process through its registered agent, United Agent Group, Inc., located at 3411 Silverside Road Tatnall Building #104, Wilmington, Delaware 19810.

184.    Carrier has done business throughout the United States, including conducting business in Illinois.

185.    Carrier manufactured, sold, marketed, and/or distributed AFFF through its many divisions and brands, including but not limited to Kidde and UTC.

186.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Carrier has contaminated Illinois' environment and natural resources.

187.    Defendant Buckeye Fire Equipment Company ("Buckeye") is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

188.    Buckeye may be served with process through its registered agent, A Haon Corporate Agent, Inc., 29225 Chagrin Boulevard, Suite 350, Pepper Pike, Ohio 44122.

189.    Buckeye conducts business throughout the United States, including in the State of Illinois.

190.    Buckeye manufactured, distributed, marketed, and/or sold AFFF throughout the United States, including in Illinois.

23

FILED DATE: 4/5/2023 5:51 PM     2023L003355

191. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Buckeye has contaminated Illinois' environment and natural resources.

192. Defendant National Foam, Inc. ("National Foam") is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.

193. National Foam can be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

194. National Foam currently manufactures the Angus brand of AFFF products and is a subsidiary of Angus International Safety Group, Ltd., a United Kingdom private limited company.

195. National Foam conducts business throughout the United States, including in Illinois.

196. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by National Foam has contaminated Illinois' environment and natural resources.

197. Defendant Angus Fire Armour Corporation ("Angus Fire") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 141 Junny Road, Angier, North Carolina 27501.

198. Angus Fire may be served with process through its registered agent, The Prentice Hall Corporation System, Inc., at 251 Little Falls Drive, Wilmington, Delaware 19808.

199. Angus Fire manufactured, sold, marketed, and/or distributed AFFF and has done business throughout the United States, including Illinois.

200. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Angus Fire has contaminated Illinois' environment and natural resources.

24

201.    Defendant Royal Chemical Company, Ltd. ("Royal Chemical") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 8679 South Freeway Drive, Macedonia, Ohio 44056.

202.    Royal Chemical may be served with process through its registered agent, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

203.    Royal Chemical manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including Illinois.

204.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Royal Chemical has contaminated Illinois' environment and natural resources.

205.    Defendant Verde Environmental, Inc. a/k/a Micro-Blaze, Inc. ("Verde") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 9223 Eastex Fairway, Houston, Texas, 77093.

206.    Verde may be served with process through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

207.    Verde does business throughout the United States, including in Illinois.

208.    Verde manufactured, sold, marketed, and/or distributed AFFF throughout Illinois.

209.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Verde has contaminated Illinois' environment and natural resources.

210.    Defendant Honeywell International, Inc. ("Honeywell International") is a Delaware corporation with its principal place of business located at 855 South Mint Street, Charlotte, North Carolina 28202.

211.    Honeywell International is registered to do business within Illinois and may be served with process through its registered agent, Illinois Corporation Service Company, at 801

FILED DATE: 4/5/2023 5:51 PM   2023L003355

Adlai Stevenson Drive, Springfield, Illinois 62703.

212.    Honeywell International does business throughout the United States, including conducting business in Illinois.

213.    Honeywell International manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including in Illinois.

214.    Upon information and belief, AFFF manufactured, sold, marketed and/or distributed by Honeywell International has contaminated the environment and natural resources in Illinois.

215.    Defendant Honeywell Safety Products USA, Inc. ("Honeywell Safety") is a Delaware corporation with its principal place of business located at 855 South Mint Street, Charlotte, North Carolina, 28202.

216.    Honeywell Safety is registered to do business in Illinois and may be served with process through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

217.    Honeywell Safety is a wholly owned subsidiary of Honeywell International.

218.    Honeywell Safety does business throughout the United States, including in Illinois.

219.    Honeywell Safety manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including Illinois.

220.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Honeywell Safety has contaminated Illinois' environment and natural resources.

221.    Defendant Dynax Corporation ("Dynax") is a corporation organized and existing under the laws of Delaware with its principal place of business located at 79 Westchester Avenue, Pound Ridge, New York 10576.

26

FILED DATE: 4/5/2023 5:51 PM   2023L003355

222.     Dynax may be served with process through its registered agent, Corporate Systems LLC, at 3500 South Dupont Highway, Dover, Delaware 19901.

223.     Dynax does business throughout the United States, including conducting business in Illinois.

224.     Dynax manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including conducting business in Illinois.

225.     Upon information and belief, AFFF manufactured, sold, marketed and/or distributed by Dynax has contaminated Illinois' environment and natural resources.

226.     Defendant Amerex Corporation ("Amerex") is an Alabama corporation with its principal place of business located at 7595 Gadsden Highway, Trussville, Alabama 35163.

227.     Amerex is registered to do business in Illinois and may be served with process through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

228.     Amerex does business throughout the United States, including conducting business in Illinois.

229.     At all relevant times, Amerex manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including in Illinois.

230.     Upon information and belief, AFFF manufactured, marketed, sold, and/or distributed by Amerex contaminated the environment and natural resources in Illinois.

231.     Defendant Perimeter Solution, LP ("Perimeter") is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at 8000 Maryland Avenue, Suite 350, Clayton, Missouri 63105.

FILED DATE: 4/5/2023 5:51 PM   2023L003356

232.   Perimeter may be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

233.   Perimeter does business throughout the United States, including conducting business throughout Illinois.

234.   In 2019, Perimeter purchased the Solberg products division of Amerex.

235.   Solberg manufactured, sold, and/or distributed fire safety products, including AFFF.

236.   Perimeter is the successor-in-interest to Solberg.

237.   Perimeter manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including Illinois.

238.   Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Perimeter contaminated Illinois' environment and natural resources.

239.   Defendant Nation Ford Chemical Company ("Ford Chemical") is a South Carolina corporation with its principal place of business located at 2300 Banks Street, Fort Mill, South Carlina, 29715.

240.   Ford Chemical may be served with process through its registered agent, John A. Dickson, at 2300 Banks Street, Fort Mill, South Carolina, 29715.

241.   Ford Chemical does business throughout the United States, including conducting business in Illinois.

242.   Ford Chemical manufactured, sold, marketed, and/or distributed AFFF throughout the United States, including in Illinois.

243.   Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Ford Chemical contaminated the environment and natural resources in Illinois.

244. Defendant Chemdesign Products, Inc. ("Chemdesign") is a Delaware corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin, 54143.

245. Chemdesign may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

246. Chemdesign does business throughout the United States, including conducting business within Illinois.

247. Chemdesign manufactured, sold, marketed, and distributed AFFF throughout Illinois.

248. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Chemdesign contaminated the environment or natural resources of Illinois.

249. Defendant Fire Services Plus, Inc. ("Fire Services") is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 473 Dividend Drive, Peachtree City, Georgia 30269.

250. Fire Services may be served with process through its registered agent, Ronald E. Thames, 180 Etowah Trace, Fayetteville, Georgia 30214.

251. Fire Services conducted business throughout the United States, including in Illinois.

252. Fire Services manufactured, sold, marketed, and/or distributed AFFF throughout the State of Illinois.

253. Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Fire Services contaminated the environment and natural resources of Illinois.

254. Defendant Deepwater Chemicals, Inc. ("Deepwater Chemicals") is a Delaware corporation with a principal place of business located at 196122 East County Road 40, Woodward, Oklahoma 73801.

29

FILED DATE: 4/5/2023 5:51 PM     2023L003355

255.    Deepwater Chemicals can be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

256.    Deepwater Chemicals manufactured, sold, marketed, and distributed AFFF throughout the United States, including Illinois.

257.    Upon information and belief, AFFF manufactured, sold, marketed, and/or distributed by Deepwater Chemicals contaminated the environmental and natural resources in Illinois.

258.    All Defendants: (a) have designed, marketed, developed, distributed, sold, manufactured, released, supplied, transported, arranged for disposal or treatment of, handled, and/or used AFFF in Illinois, such that AFFF Contamination occurred and threatened the State's natural resources and property; (b) acted with actual or constructive knowledge that AFFF would be delivered into areas affecting the State's natural resources and property; (c) are legally responsible for and committed each of the wrongful acts alleged in this Complaint; and (d) promoted AFFF, despite the availability of reasonable alternatives and their actual or constructive knowledge that the contamination alleged in this Complaint would be the inevitable result of their conduct.

259.    This conduct has caused past and ongoing injury to Illinois' natural resources, environment, public heath, and welfare.

260.    To the extent any act or omission of any Defendant is alleged in this Complaint, the officers, directors, agents, employees, or representatives of each such Defendant committed or authorized each such act or omission or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs

FILED DATE: 4/5/2023 5:51 PM   2023L003355

of such Defendants, and did so while acting within the scope of their duties, employment, or agency.

261.     Any references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## JURISDICTION AND VENUE

262.     This Court has jurisdiction over the subject matter of this action pursuant to Article VI, Section 9 of the Illinois Constitution, IL. CONST. ART. VI, § 9.

263.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209 (2020) because at all relevant times, Defendants: (i) transacted business in Illinois, (ii) committed tortious actions within Illinois; (iii) owned, used, or possessed real estate within the state of Illinois; and/or (iv) made or performed a contract or promise substantially connected with this State.  *See* 735 ILCS 5/2-209.

264.     Venue is proper pursuant to 735 ILCS 5/2-101 because the transactions, or some part thereof, out of which the causes of action at issue in this Complaint arose in Cook County.

265.     Defendants' connections with the State of Illinois are consistent with the requirements of the Due Process Clause of the Fourteenth Amendment given that Defendants have purposefully availed themselves of the privilege of conducting activities in Illinois, the causes of action arise from the Defendants' activities in Illinois, and Defendants' activities are so substantially connected to Illinois to make the exercise of jurisdiction over Defendants reasonable.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

## FACTUAL ALLEGATIONS

I.    **AFFF is toxic and poses substantial health and environmental risks.**

266.    Firefighting foams can be divided into two classes: (a) foam used to extinguish Class A materials, such as wood, paper, and brush; and (b) foam used to extinguish Class B materials, which include gasoline, oil, and jet fuel.[10]

267.    Generally, Class B firefighting foams are any firefighting foam created specifically for addressing Class B types of fires, such as flammable liquid fires.[11]

268.    "Class B foams can be synthetic foams, including [AFFF], or alcohol resistant aqueous film-forming foam, or protein foams."[12]

269.    AFFF is used at industrial facilities, municipal fire departments and fire training centers, aviation operations, and military facilities.[13]

270.    AFFF is also used for extinguishing live fires caused by Class B materials.

271.    AFFF is a type of Class B firefighting foam that contains PFAS.

272.    PFAS are a family of chemical compounds containing strong carbon-fluorine bonds.[14]

273.    PFAS are human-made, synthetic chemicals that do not exist naturally in the environment.[15]

---

[10] *Aqueous Film-Forming Foam (AFFF)*, INTERSTATE TECHNOLOGY REGULATORY COUNCIL, (April 2020), https://pfas-1.itrcweb.org/fact_sheets_page/PFAS_Fact_Sheet_AFFF_April2020.pdf.
[11] *See id.*
[12] *Id.* at 1.
[13] *See Id.*
[14] *EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan*, *supra* note 1, at 9.
[15] *See, e.g., EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan*, *supra* note 1, at 1; *see also PFAS Strategic Roadmap*, *supra* note 1, at 6.

FILED DATE: 4/5/2023 5:51 PM    2023L003356

274.    PFAS are known as "forever" chemicals because they are extremely persistent in the environment and resistant to typical environmental degradation processes.[16]

275.    The persistence of PFAS and their resistance to biodegradation leads to their accumulation in the environment.[17]

276.    PFAS behave differently depending on their makeup, but generally absorb poorly and tend to be mobile in soil and groundwater systems.

277.    This combination of properties enables PFAS to readily migrate in soil, groundwater, and surface water.[18]

278.    The pernicious characteristics of PFAS mean that once these chemicals are released into the environment, they tend to migrate into and can cause extensive contamination and injury to the State's environment, natural resources, and property.[19]

279.    Humans are exposed to PFAS through ingestion of contaminated drinking water and food, inhalation, dermal contact, and other pathways.[20]

280.    PFAS bioaccumulate in humans, animals, and plants, and can bio-magnify in humans and animals that consume plants, dairy, and meat contaminated with PFAS.[21]

---

[16] *See* Matheny, K., *Internal Documents Show 3M Hid PFAS Dangers for Decades*, DETROIT FREE PRESS (May 9, 2019), https://www.freep.com/story/news/local/michigan/2019/05/09/3-m-lawsuit-pfas-water-contamination-michigan/3291156002/.

[17] *See EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan*, *supra* note 1, at 9.

[18] Simon, J., *Editor's perspective – Per- and polyfluorinated substances pose substantial challenges to remediation practitioners*, 28 THE JOURNAL OF ENV'T CLEANUP COSTS, TECHNOLOGIES, AND TECHNIQUES 3, 3-7 (Mar. 12, 2018), https://onlinelibrary.wiley.com/doi/full/10.1002/rem.21547

[19] *See generally id.*

[20] *See EPA's Per- and Polyfluoroalkyl Substances (PFAS) Action Plan*, *supra* note 1.

[21] *See, e.g.*, *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 2, 2022), https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html#:~:text=Many%20PFAS%2C%20including%20perfluorooctane%20sulfonic,bioaccumulate)%20in%20fish%20and%20wildlife.

281.    PFAS can even be found in the blood of human infants.[22]

282.    Breast milk appears to be a source of PFAS exposure.[23]

283.    Chronic exposure to PFAS at low doses can result in adverse health effects for humans as well as animals.[24]

284.    Exposure to PFAS is correlated with a wide array of harmful and serious health effects in humans and animals, including but not limited to:

(a) Liver damage;

(b) Altered cholesterol levels;

(c) Pregnancy-induced hypertension and/or preeclampsia;

(d) Thyroid disease;

(e) Modulation of the immune system;

(f) Decreased fertility; and

(g) Decreases in birth weight.[25]

285.    The U.S. EPA has classified PFOA and PFOS as having suggestive evidence of carcinogenic potential in humans, specifically for testicular, kidney, and liver cancer.

286.    AFFF Contamination is a serious threat to human health and the State's natural resources and property.

287.    For decades, PFAS have been used in the manufacture of AFFF.[26]

---

[22] *See Toxicological Profile for Perfluoroalkyls*, U.S. DEP'T OF HEALTH AND HUMAN SERVICES, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (May 2021), https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.
[23] *Id.*
[24] *Id.*
[25] *See id.*
[26] *See id.* at 3-7; *see also PFAS Strategic Roadmap, supra* note 1, at 5.

34

FILED DATE: 4/5/2023 5:51 PM    2023L003355

FILED DATE: 4/5/2023 5:51 PM   2023L003355

288.    3M's AFFF products were created using an electrochemical fluorination ("ECF") process, and contained PFOS, PFOA, PFNA, and/or PFHxS and/or their precursors.

289.    The remaining Defendants' AFFF products are created using a telomerization process or a similar process.

290.    AFFF is routinely used in firefighting training activities.

291.    AFFF has a long shelf life and may still be stored and used at sites including airports, military installations, petroleum refineries, and chemical manufacturing plants.[27]

292.    When used as intended, AFFF contaminates the environment in a variety of ways, including but not limited to, through surface water and groundwater in relation to firefighting events, training exercises, fire preparations, aviation activities, equipment maintenance, and other activities.

293.    Exposure to AFFF Contamination is correlated with a wide array of harmful and serious public health effects.

294.    As a result of its chemical structure, AFFF Contamination does not normally hydrolyze, photolyze, or biodegrade under environmental conditions, and is extremely persistent in the environment. This means that once AFFF is released into the environment, as is necessary during intended use, it migrates into and causes extensive contamination and injury to State natural resources and property.

295.    AFFF Contamination levels in State natural resources including groundwater and drinking water typically fluctuate over time as AFFF Contamination moves through groundwater, and due to other factors, including changes in seasonal precipitation levels.

---

[27] *See Per- and Polyfluoroalkyl Substances (PFAS)*, ILLINOIS ENV'T PROT. AGENCY https://www2.illinois.gov/epa/topics/water-quality/pfas/Pages/default.aspx (last visited Nov. 28, 2022).

FILED DATE: 4/5/2023 5:51 PM   2023L003355

**Military Specification AFFF.**

296.    One type of AFFF is manufactured in accordance with military specification Mil-F-24385 ("Mil-Spec AFFF").

297.    Mil-Spec AFFF is used on military bases and at federally regulated civilian airports.

298.    The purpose of Mil-F-24385 is to obtain a product that rapidly controls and contains fuel-based fires. It is a procurement specification and a performance specification, but it is not a manufacturing or product specification.

299.    Defendants had complete control over what specific fluorinated surfactant they chose in their proprietary formulation and the methods and procedures for making their products.

300.    Defendants established the manufacturing specifications and the product quality specifications of their product based on meeting Mil-F-24385's product performance specifications.

301.    There are thousands of "fluorocarbon surfactants." There was no requirement under Mil-F-24385 (or any of its amendments) for Defendants to use PFOA, PFOS, or other hazardous PFAS compounds in the manufacture of Mil-Spec AFFF.

302.    Defendants had complete control over what specific fluorinated surfactant they chose in their proprietary formulation and the methods and procedures for making Mil-Spec AFFF.

303.    Defendants chose to utilize PFOA, PFOS, and other hazardous PFAS compounds in Mil-Spec AFFF and failed to warn and share information with all its customers, including the United States Department of Defense ("DOD"), on the impacts of their products on the environment.

304.    From the 1960s through 2001, DOD purchased AFFF exclusively from 3M and Tyco/Ansul.

305.    DOD and its related agencies did not develop Mil-Spec AFFF products.

36

FILED DATE: 4/5/2023 5:51 PM     2023L003355

306.   DOD and its related agencies developed a product performance specification and were not directly involved in design of formulations and the compositions of Mil-Spec AFFF.

307.   Mil-Spec AFFF manufactured, distributed, marketed, or sold by Defendants was used and released throughout Illinois leading to extensive contamination of the State's environment and natural resources, and interferes with public safety and the use and enjoyment of those precious resources.

308.   Absent the use of remediation and treatment methods, AFFF Contamination will continue to spread through the State's natural resources and property.

309.   Defendants manufactured, distributed, sold, and/or marketed Mil-Spec AFFF throughout the State of Illinois, causing widespread AFFF Contamination and injury to Illinois' public health, safety, welfare, natural resources, and the environment.

**Commercial AFFF.**

310.   Commercial AFFF is not designed and/or manufactured in accordance with military specification Mil-F-24385.  Instead, Commercial AFFF is another type of AFFF used as a fire suppressant in commercial properties or by municipal fire departments.

311.   Since the 1960s, Defendants have made Commercial AFFF available for use by private entities and state and local fire departments.

312.   Commercial AFFF differs from Mil-Spec AFFF.

313.   Commercial AFFF is not distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used in Illinois at the direction of the official authority of the United States Government or any of its federal agencies.

314.   Commercial AFFF is commercially available for purchase to non-military, non-aviation, and non-tribal sites throughout the United States, including in Illinois.

37

FILED DATE: 4/5/2023 5:51 PM    2023L003355

315.    Commercial AFFF includes AFFF produced in conformance with Underwriters Laboratory ("UL") lab standards.

316.    Mil-Spec performance and quality control specifications do not govern or apply to the manufacture, sale, or use of Commercial AFFF.

317.    Commercial AFFF contains PFAS, including PFOA and PFOS.

318.    Recently, some states, including Illinois, have placed restrictions upon the use of Commercial AFFF to address widespread AFFF Contamination related to its release.

319.    Defendants manufactured, sold, marketed, and/or distributed Commercial AFFF throughout the State of Illinois, causing injury to Illinois's public health, safety, welfare, natural resources, and the environment.

320.    The release of Commercial AFFF into the environment has harmed the State's public health, safety, welfare, and the environment.

II.    **Defendants manufactured, distributed, marketed, and sold AFFF throughout the State of Illinois.**

321.    In the 1940s, 3M began using the ECF process to create carbon fluorine bonds, which are key components of PFAS. The ECF process results in a product that contains and/or breaks down into compounds containing PFAS.

322.    In the 1960s, 3M used its ECF process to develop AFFF.

323.    3M manufactured, marketed, sold, and distributed AFFF and fluorosurfactants used in the production of AFFF from the 1960s until the early 2000s.

324.    In the 1960s, certain manufacturers began developing AFFF designed to suppress flammable liquid fires which cannot be effectively extinguished with water alone.

38

FILED DATE: 4/5/2023 5:51 PM     2023L003355

325. National Foam and Tyco/Ansul began to manufacture, market, distribute, and sell AFFF in the 1970s.

326. Angus Fire and Chemguard began to manufacture, market, distribute, and sell AFFF in the 1990s.

327. In 2000, 3M announced it would phase out and find substitutes for its PFOS chemistry.

328. At the time of the phase out in 2000, 3M was the only United States manufacturer of PFOS.[28]

329. After 3M exited the AFFF market in 2000, all other Defendants continued to manufacture, market, distribute, and sell AFFF and/or fluorosurfactants to be used in AFFF throughout the United States.

330. At all relevant times, Defendants manufactured, marketed, distributed and/or sold AFFF that was used throughout Illinois and caused injury to Illinois' public health, safety, welfare, natural resources, and the environment.

331. Some or all of the AFFF manufactured, marketed, distributed, and sold by Defendants contained fluorsurfactants manufactured and sold by Old DuPont/Chemours, Arkema, AGCCA, Chemguard, Dynax, and/or Clariant.

332. Defendants manufactured, marketed, sold, and distributed AFFF to the military, State government entities, counties, municipalities, local fire departments, and/or other governmental entities and quasi-governmental entities for use within Illinois.

---

[28] *EPA and 3M Announce Phase Out of PFOS*, U.S. ENV'T. PROT. AGENCY, (May 16, 2000), https://www.epa.gov/archive/epapages/newsroom_archive/newsreleases/33aa946e6cb11f35852568e1005 246b4.html#:~:text=Following%20negotiations%20between%20EPA%20and%203M%2C%20the%20co mpany,health%20and%20the%20environment%20over%20the%20long%20term.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

### III.    Defendants manufactured, sold, distributed, and marketed AFFF with full knowledge of the toxicity and the health and environmental risks posed by AFFF Contamination.

333.    Defendants have known for decades that AFFF is toxic and poses substantial health and environmental risks.

334.    As early as the 1950s, 3M's internal animal studies found that PFAS are "toxic."

335.    3M's 1950s toxicity finding was confirmed in further internal studies throughout the late 1970s and 1980s.[29]

336.    By the 1960s, 3M knew that perfluorochemicals, including fluorosurfactants, are stable, persist in the environment, and do not degrade.[30]

337.    As early as 1961, DuPont company scientists issued internal warnings regarding PFOA's toxicity.  The DuPont Toxicology Section Chief stated that PFOA should be "handled with extreme care."[31]

338.    "In 1970, a company that purchased 3M's firefighting foam had to abandon a test of [AFFF] because it killed all the fish."[32]

339.    As early as 1974, the United States Navy's ("U.S. Navy") research centers raised concerns "over discharging 'a large raft of snow-white AFFF floating' into harbors."[33]

340.    3M responded to the U.S. Navy's concerns with an assurance that AFFF used by the U.S. Navy would have no adverse effect on the environment but did note that the U.S. Navy

---

[29] Swanson, L., *Former Attorney General of Minnesota Testimony Before the Committee on Oversight and Reform, Subcommittee on Environment, United States House of Representatives* (Sept. 10, 2019), at 3-4, https://www.congress.gov/116/meeting/house/109902/witnesses/HHRG-116-GO28-Wstate-SwansonL-20190910.pdf (hereinafter referred to as "Swanson Testimony").

[30] Swanson Testimony, at Exhibit K.

[31] *TSCA 8(e) Petition to U.S. EPA*, ENV'T. WORKING GROUP, https://www.ewg.org/news-insights/official-correspondence/ewg-tsca-8e-petition-us-epa (last visited Nov. 28, 2022).

[32] Swanson Testimony, at 3; *see also* Swanson Testimony, at Exhibit C.

[33] Lerner, S., *The Military is Spending Millions to Replace Toxic Firefighting Foam with Toxic Firefighting Foam,* THE INTERCEPT, (Feb. 10, 2018), https://theintercept.com/2018/02/10/firefighting-foam-afff-pfos-pfoa-epa/.

should consider foam made of glycerin and water because "practically anything undrinkable by humans is unfit to discharge over the side into the sea."[34]

341.    In 1975, Dr. Warren Guy and Dr. Donald Taves, two independent scientists, found PFAS in human blood banks across the country and contacted 3M to inform them that they thought 3M chemicals might be to blame and to inquire whether fluorocarbon carboxylic acids were present in items in use by the public.[35]

342.    In response to Drs. Guy and Taves's inquiry, 3M chose to "plead ignorance" and instead "adopted a position of scientific curiosity and desire to assist in any way possible."[36]

343.    3M conducted its own study like the study performed by Drs. Guy and Taves and confirmed that PFAS were widely present in human blood.[37]

344.    3M conducted multiple studies throughout 1975 and 1976 that confirmed the presence of PFAS in blood of the workers who handled PFAS at levels between 50 to 1000 times higher than "normal" levels.[38]

345.    Despite this, in 1976, 3M lawyers urged 3M not to reveal that the "true identity" of the chemical in the blood was PFOS.[39]

346.    DuPont was also aware by 1976 that there were research reports that detected organic fluorine in United States' blood bank samples.

347.    In October 1976, the U.S. Navy entered into a contract with Ansul "to perform experimental work pertaining to the environmental characteristics of AFFF formulations and

---

[34] *Id.*
[35] Swanson Testimony, at Exhibit D.
[36] *Id.*
[37] Swanson Testimony, at Exhibit E.
[38] Swanson Testimony, at Exhibit F.
[39] *Id.*

41

components thereof."[40] The U.S. Navy noted that, though AFFF was highly effective at fire suppression, "improvements are desired in the environmental area."[41] The study was intended to examine the effects of AFFF use including "biodegradability, toxicity toward sewage bacteria, [and] fish toxicity."[42]

348.    Upon information and belief, Defendant Tyco/Ansul was aware of the environmental and health impacts associated with AFFF in 1977. Tyco/Ansul then studied whether it could produce an AFFF that posed less of a risk to human health and the environment.

349.    In 1978, DuPont initiated plans to review and monitor its employees who were exposed to PFOA, a chemical included in and a byproduct of AFFF. DuPont obtained blood samples from workers to assess whether they contained organic fluorine.

350.    By 1979, DuPont's data indicated its workers exposed to PFOA had a significantly higher incidence of health issues, including abnormal liver function, compared to workers who were not exposed to PFOA.

351.    In 1979, internal 3M animal studies launched in response to Drs. Guy and Taves's PFOS findings concluded that all fluorochemicals tested were toxic to some degree and "[PFOS] was the most toxic of the three chemicals studied and certainly more toxic than anticipated."[43]

---

[40] *Memorandum to Aeronautical Systems Division re: Improved Environmental Impact Properties for AFFF Materials,* NAVAL RESEARCH LABORATORY, (Oct. 21, 1976), https://www.documentcloud.org/documents/4344668-122.html.

[41] *Id.*

[42] *Id.*

[43] Plaintiff's Motion to Compel Defendant 3M Company's Production of Custodial File of Lewis Lehr, *In re Aqueous Film-Forming Foam Products Liability Litigation*, No. 2:18-mn-02873 (D.S.C. Feb. 15, 2022), ECF No. 2174, Exhibit Q.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

FILED DATE: 4/5/2023 5:51 PM  2023L003355

352. 3M's internal 90-day monkey study reported "GI tract toxicity, lipid depletion of adrenals, atrophy of pancreatic exocrine cells and serous alveolar cells of the salivary glands."[44] In total, 20 of the 28 monkeys involved in the study died from PFOS exposure.[45]

353. By 1980, DuPont internally confirmed that PFOA "is toxic," that "people accumulate [PFOA]," and "continued exposure is not tolerable."[46]

354. Despite this information, in 1980, 3M developed an internal memorandum entitled "Some Probable Questions on 3M Fluorochemicals with Suggested Answers" outlining responses that were presumably provided to customers and other concerned individuals who inquired about the safety of 3M's fluorochemical-containing products, including AFFF.[47] This memorandum contained the following questions and answers:

- Q: "Does the presence of fluorochemicals in blood cause cancer?"

    o A: "There is no such evidence."

- Q: "Can any of the following ill effects be caused by fluorochemicals? a. blood disease, b. impotency, c. birth defects, d. chromosome damage, e. reproductive effects, f. immunoresponsive effects."

    o A: "No, not to our knowledge."

- Q: "I have heard fluorochemicals are persistent. Does this mean that they are like PCBs and DDT?"

---

[44] *Id.,* Exhibit P.
[45] *Id.*
[46] Lerner, S., *The Teflon Toxin*, THE INTERCEPT (Apr. 11, 2015), https://theintercept.com/2015/08/11/dupont-chemistry-deception/.
[47] Plaintiff's Motion to Compel Defendant 3M Company's Production of Custodial File of Lewis Lehr, *In re Aqueous Film-Forming Foam Products Liability Litigation*, No. 2:18-mn-02873 (D.S.C. Feb. 15, 2022), ECF No. 2174.

- A: "The answer is 'NO'. . . like DDT and PCBs [fluorochemicals], or at least their highly fluorinated organic compounds, will persist unchanged for long times under typical environmental conditions, but persistence alone does not mean that a compound is an environmental hazard . . . to date, no evidence exists that a 3M fluorochemical presents an unreasonable environmental risk."

- Q: "do you think that your products – SCOTCHGUARD, SCOTCHBAN, AFFF, and FLUORINERTS – would continue to be available? Or, are you planning to discontinue their production."

  - A: "The products will continue to be available. We see no need for discontinuing our products."

355. DuPont continued to conduct research on PFOA's toxicity to humans and animals in the 1980s. In 1985 and 1986, scientists from DuPont's Haskell Laboratory for Toxicology and Industrial Medicine published two studies on PFOA's toxicity. One of the studies noted that PFOA was "moderately toxic" and produced "an increase in liver size and corneal capacity" in rats exposed by inhalation to PFOA, while the other found skin irritation in rats and rabbits and increased liver size in rates based on PFOA's dermal toxicity.

356. By 1988, DuPont was also aware of another rat toxicity study that demonstrated a relationship between PFOA exposure and certain increased cancer rates, including testicular cancer.

357. In 1988, DuPont classified PFOA as a possible human carcinogen.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

358. At some point in the late 1980s a 3M scientist, Dr. Eric Reiner, verbally informed a Sacramento, California fire department that AFFF concentrate was not biodegradable.[48]

359. In 1988, Boots and Coots, an AFFF user, complained to 3M that the company falsely claimed the product was biodegradable.[49] Boots and Coots discovered this information after speaking with the Sacramento, California fire department.[50]

360. Immediately following receipt of the complaint from Boots and Coots, a 3M employee forwarded the correspondence to Dr. Reiner stating that there were "some misunderstandings" which could result in "serious repercussions."[51]

361. In December 1988, Dr. Reiner drafted an internal memorandum imploring 3M to stop "perpetuating the myth that these fluorochemical surfactants are biodegradable" stating "it is highly probable that this misconception will eventually be discovered, and when that happens 3M will likely be embarrassed, and we and our customers may be fined and forced to immediately withdraw products from the market."[52]

362. By 1993, 3M was aware that there was some evidence that lactating goats transferred PFAS to their kids in milk and it was likely that a similar phenomenon would occur in human mothers.[53]

363. In 1997, 3M provided DuPont with a Material Safety Data Sheet for FC-118 Fluorad Brand Fluorochemical Surfactant, which included a warning that stated: "CANCER: WARNING: Contains a chemical which can cause cancer. (3825-26-1) (1983 and 1993 studies

---

[48] Swanson Testimony, at Exhibit G.
[49] Id.
[50] Id.
[51] Id.
[52] Swanson Testimony, at Exhibit H.
[53] Id.

conducted jointly by 3M and DuPont)."[54]

364. 3825-26-1 is the Chemical Abstract Services Registry Number ("CASRN") for Pentadecafluorooctanoic acid ammonium salt, which is a chemical form of PFOA.

365. In 1998, Dr. Richard Purdy, a 3M scientist, conducted a risk assessment of potential adverse effects on marine mammals from PFOS in the food chain and informed 3M of his findings that there was a significant risk of harm of food chain transfer, and that "the levels we are seeing in eagles and other biota is likely to climb each year."[55]

366. In 1998, 3M finally reported widespread presence of PFOS in the blood of the general population to the US EPA.[56]

367. Even after the phase out of PFOA and PFOS, Modern AFFF continues to pose an environmental and human health risk that Defendants were aware of.

368. At an August 2000 meeting, a US EPA staffer provided additional information of the events leading to the agreed phase out of PFOS.[57] The staffer explained a study conducted by 3M and DuPont involving PFOS exposure and health impacts on monkeys in which the monkeys lost weight, developed enlarged livers, and in some cases, died within three weeks. Even the lowest dose of PFOS had proven fatal to the monkeys in this study, therefore, researchers could not find any safe level of exposure.[58] Citing this study and others like it, the US EPA staffer warned that

---

[54] *Swanson Testimony*, at Exhibit A.
[55] Purdy, R., *Email to Georjean Adams re: Risk to the environment due to the presence of PFOS* (Dec. 3, 1998, 11:53 AM), https://static.ewg.org/reports/2019/pfa-timeline/1998_Food-Chain.pdf.
[56] Plaintiff's Motion to Compel Defendant 3M Company's Production of Custodial File of Lewis Lehr, *In re Aqueous Film-Forming Foam Products Liability Litigation*, No. 2:18-mn-02873 (D.S.C. Feb. 15, 2022), ECF No. 2174, at Exhibit D.
[57] *The Military is Spending Millions to Replace Toxic Firefighting Foam with Toxic Firefighting Foam, supra* note 33.
[58] *Id.*

46

FILED DATE: 4/5/2023 5:51 PM     2023L003355

continued release of PFOS poses a "serious concern for potential future risk for humans and wildlife."[59]

369.    Despite Defendants' claims that short chain Modern AFFF is less toxic and not bioaccumulative, Defendants are aware that short-chain AFFF compounds have been found in human blood.

370.    Less than a year after the US EPA staffer warned of the concerns related to PFOS, she spoke again at the Pentagon during a DOD AFFF Workshop.[60] During the DOD AFFF Workshop, the US EPA staffer discussed the human health and environmental dangers associated with other fluorosurfactants used in AFFF, including their known toxicity and persistence in the environment. She suggested that DOD not rely on AFFF at all any longer and instead recommended a "program to seek, test, and consider long-range alternatives."[61] In the meantime, US EPA conducted studies and contemplated various regulatory schemes to address fluorosurfactants.[62]

371.    In 2007, Ronald Sheinson, a chemist at the Naval Research Laboratory discussed environmental and health impacts associated with Modern AFFF over email.[63] Specifically, Mr. Sheinson stated that though the Modern AFFF do not contain PFOS intentionally does not mean PFOS is not an accidental by product. "The larger issue in my mind is that the telomer foams, while not purposefully containing perfluoroalkyl acid compounds, can still probably make them as

---

[59] *Id.*

[60] Dominaiak, M., *EPA Activities/Issues on Fluorosurfactants,* U.S. EPA, (March 16, 2001), https://www.documentcloud.org/documents/4358461-2001-EPA-DoD-Meeting-on-AFFF.html.

[61] *Id.*

[62] *Id.*

[63] Sheinson, R., *Email to Carl Glover and Brian Bertold re: EC Governance Council Meeting Summary Memo,* NAVAL RESEARCH LABORATORY, (Nov. 6, 2007), https://www.documentcloud.org/documents/4341558-US00007858.html.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

degradation products."[64] Further, Mr. Sheinson stated shorter chain fluorosurfactants "still have some as yet not completely quantified hazard properties."[65]

372.    In his 2007 email, Mr. Sheinson states he has been in contact with members of the FFFC, including Defendants, and shared his findings regarding Modern AFFF.

373.    Research from 2017 confirms that short chain fluorosurfactants used in Modern AFFF are even more difficult to remove from the environment and break through filters more easily than PFOS and PFOA.[66]

374.    Recent scientific studies have indicated that "short-chain PFAS are more widely detected, more persistent and mobile in aquatic systems, and thus may pose broader risks to human and ecosystem health."[67]

375.    At least one short-chain PFAS has been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-short-chain PFAS.

376.    Research and testing performed by and/or on behalf of Defendants that make and/or use short-chain PFAS indicates that such short-chain PFAS present the same, similar, and/or additional risks to human health, including risk of cancer.

377.    3M did not exit the AFFF market until the early 2000s.

378.    Even after 3M's exit from the market, other Defendants continued to manufacture and sell AFFF and/or fluorosurfactants to be used in the manufacture of AFFF.

---

[64] *Id.*

[65] *Id.*

[66] Xiao, X., Ulrich, B., Chen, B., and Higgins, C., *Scotption of Poly- and perfluoroalkyl Substances (PFASs) relevant to Aqueous Film-Forming Foam (AFFF) Impacted Groundwater by Biochars and Activated Carbon,* ENVIRON. SCI. TECHNOL., (June 6, 2017), https://pubs.acs.org/doi/full/10.1021/acs.est.7b00970.

[67] *See* Fan Li, *et al.*, *Short-chain per- and polyfluoroalkyl substances in aquatic systems: Occurrence, impacts and treatment,* 380 CHEMICAL ENGINEERING JOURNAL 1 (2020), https://www.sciencedirect.com/science/article/abs/pii/S1385894719319096.

379. Historical DuPont began manufacturing its own PFOA chemicals in 2002, despite knowing about the health and environmental risks of its use of PFOA for consumer products starting in 1951.

380. DuPont continued to manufacture, market, and sell PFOA to be used in the manufacturing of AFFF until 2013.

381. Each Defendant had access to information related to the dangers of AFFF Contamination, but kept this information hidden from the public as they continued to profit from the sale of AFFF and/or fluorosurfactants used in the manufacture of AFFF.

## IV.     Defendants intentionally hid their knowledge of AFFF Contamination's toxicity and environmental and health risks from Illinois and the public. .

382. Despite their explicit knowledge of the dangers of AFFF Contamination, Defendants deliberately and intentionally concealed the dangers of AFFF from governmental entities, including the State of Illinois, its agencies, and the public at large, to protect profits and avoid public responsibility for injuries and damages caused by their toxic products.

383. More troubling, Defendants actively engaged in a campaign to promote AFFF as safe to manufacture and use and to distort scientific evidence concerning potential harms associated with perfluorochemicals.

384. In July 1976, Ansul provided the U.S. Navy with a report claiming "[t]he results of the 'In Vivo' tests indicate that Ansul [AFFF] has a relatively low level of toxicity" and "test results indicate [AFFF has] a reasonably high level of biodegradability."[68]

385. As early as 1978, DuPont's Medical Director authorized and published an article acknowledging that DuPont had "a duty to report health hazards" and "should disclose health-

---

[68] Taylor, D., *Memorandum to Naval Research Laboratory, Code 6180 re: Ansul, AFFF, Ansul Co.*, U.S. NAVY, (Jul. 16, 1976), https://www.documentcloud.org/documents/4344668-122.html.

49

FILED DATE: 4/5/2023 5:51 PM     2023L003355

hazard information" and that laying "all the facts on the table" was "the only responsible and ethical way to go" because "[t]o do less would be . . . morally irresponsible."[69]

386.     DuPont held a meeting at its corporate headquarters in Wilmington, Delaware in 1984 to discuss PFOA and its health and environmental issues.  During the meeting, DuPont discussed its "incremental liability from this point on if [they] do nothing as [they] are already liable for the past 32 years of operation" and that "legal and medical will likely take the position of total elimination" of PFOA.  DuPont did not disclose any information to U.S. EPA, any state government, or the public about the information discussed at this meeting.[70]

387.     Instead, 3M and other Defendants continued asserting to the public and governmental agencies that AFFF was nontoxic and biodegradable.

388.     For example, in September 1989, 3M released a Technical Information document for AFFF FC-783 asserting that AFFF was safe for use and effective to suppress Class A and Class B fires.  "Standardized tests are conducted as an ongoing program to evaluate and assess the impact of 3M Brand AFFF on humans and the natural environment. Based on test results, 3M Brand AFFF is biodegradable, low in toxicity and can be created in biological treatment systems. In its concentrate form, 3M Brand AFFF was found to be a slight eye and skin irritant, but as a foam solution, there are no noticeable negative effects. Tests and actual use situations have shown that animal and aquatic life are not adversely affected."[71]

---

[69] *The Teflon Toxin, supra* note 46.
[70] *C-8 Meeting Summary 5/22/84 – Wilmington*, DUPONT, https://static.ewg.org/files/dupont_elim_PFOA_1984.pdf?_ga=2.245878788.1076188668.1630336086-433698119.1624027052 (last visited Apr. 5, 2023).
[71] *Technical Information AFFF FC-783,* 3M INDUSTRIAL CHEMICAL PRODUCTS DIVISION, (Sept. 1989), https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1359.pdf#:~:text=3M%20Brand%20AFFF%22%20is%20a%20synthetic%20firefighting%20foam,in%20wood%2C%20paper%2C%20rubber%20tires%20andother%20ordinary%20combustibles.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

FILED DATE: 4/5/2023 5:51 PM   2023L003355

389.    3M hired Dr. John P. Giesy, a professor and academic journal editor who reviewed several studies of chemicals before they were published and paid him a considerable amount of money in exchange for his services.[72]

390.    Dr. Giesy would share manuscripts of potentially harmful studies with 3M before they were published and advised 3M to "keep 'bad' papers out of the literature otherwise in litigation situations they can be a large obstacle to refute."[73]

391.    Dr. Giesy informed 3M that he made sure his timesheets were written in a way so that "there was no paper trail to 3M."[74]

392.    In 1999, the 3M scientist who conducted the study about movement of PFAS through the food chain, Dr. Purdy, was so outraged by 3M's actions related to PFAS that he resigned in protest and copied U.S. EPA on his resignation letter stating that he could "no longer participate" in a 3M process that put "markets, legal defensibility and image over environmental safety."[75]

393.    Dr. Purdy further stated in his letter that "[p]erfluorooctanesulfonate is the most insidious pollutant since PCB.  It is probably more damaging than PCB because it does not degrade."[76]

394.    Dr. Purdy further stated in his letter that "3M continues to make and sell these chemicals though the company knows of an ecological risk assessment [he] did that indicates there is a better than 100% probability that perfluorooctanesulfonate is biomagnifying in the food chain and harming sea mammals . . . 3M told those of us working on the fluorochemical project not to

---

[72] Swanson Testimony, at Exhibit I.
[73] *Id.*
[74] *Id.*
[75] Swanson Testimony, at Exhibit B.
[76] *Id.*

FILED DATE: 4/5/2023 5:51 PM   2023L003355

write down our thoughts or have email discussions on issues because of how our speculations could be viewed in a legal discovery process."

395. 3M made specific statements about the safety of its most popular PFAS-containing products, including AFFF, in numerous public documents.

396. In 2000, 3M announced it would phase out PFOS which would affect the company's firefighting foam product line.[77]

397. 3M issued a press release on May 16, 2000 which was sent directly to Illinois AFFF users, representing that "[a]ll existing scientific knowledge indicates that the presence of these materials at these very low levels does not pose a human health or environmental risk."[78]

398. Within 3M's press release Dr. Charles Reich, the executive vice president of 3M's specialty material markets, was quoted stating "[w]hile this chemistry has been used effectively for more than 40 years and our products are safe, our decision to phase out production is based on our principles of responsible environmental management."

399. On the same day as 3M's phase out announcement, a US EPA press release stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."[79]

---

[77] *3M Phasing Out Some of its Specialty Materials*, 3M (May 16, 2000).
[78] *Id.*
[79] *EPA and 3M Announce Phase Out of PFOS*, U.S. ENV'T PROT. AGENCY, (May 16, 2000), https://www.epa.gov/archive/epapages/newsroom_archive/newsreleases/33aa946e6cb11f35852568e1005 246b4.html#:~:text=Following%20negotiations%20between%20EPA%20and%203M%2C%20the%20co mpany,health%20and%20the%20environment%20over%20the%20long%20term.

400. Shortly after the phase out, US EPA began urging DOD to consider non-fluorosurfactant firefighting foams.[80] Remaining AFFF market participants then began lobbying for the continued use of AFFF.

401. In 2002, a consulting company presented at a Federal Aviation Conference ("FAA") warning that AFFF was not biodegradable stating that fluorosurfactants used were "impervious to biological and most chemical assault."[81] The consulting company urged the FAA to "take a leadership role" in the effort to establish new non-fluorosurfactant foams or to "support efforts by the U.S. military and others in the international community" to do so.[82]

402. In 2001, Old DuPont, Dynax, and other Defendants founded the Fire Fighting Foam Coalition ("FFFC"), a coalition formed to advocate for AFFF's continued viability despite increasing concern around its health and environmental risks.

403. Tom Cortina is the executive director for FFFC and an AFFF lobbyist.

404. The FFFC presented to the US EPA, various branches of DOD, and other AFFF users discussing the importance of AFFF and asserting that the product was safe for human health and the environment.[83]

405. In part, through its involvement in the FFFC, Old Du Pont and other FFFC members actively marketed, sold, distributed, and lobbied for the continued use of its AFFF and fluorosurfactants used in AFFF.

---

[80] Dominaiak, M., *EPA Activities/Issues on Fluorosurfactants,* U.S. ENV'T PROT. AGENCY, (March 16, 2001), https://www.documentcloud.org/documents/4358461-2001-EPA-DoD-Meeting-on-AFFF.html.

[81] Scheffrey, J. and Hanauska, C., *Status Report on Environmental Concerns Related to Aqueous Film Forming Foam ("AFFF"),* HUGHES ASSOCIATES, INC., (May 2022), https://www.documentcloud.org/documents/4344749-8182.html.

[82] *Id.*

[83] *The Military is Spending Millions to Replace Toxic Firefighting Foam with Toxic Firefighting Foam, supra* note 33.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

406.     Naval Research Laboratory Chemist, Ronald Sheinson, described the FFFC as an "advocacy group, specifically not including 3M, primarily of MilSpec AFFF and component surfactant producers. They were in large part formed in my opinion for damage control so that the PFOS issue with 3M AFFF (and it does apply directly only to 3M products) would not tar their products."[84]

407.     Mr. Sheinson also stated "[FFFC has] cooperated with EPA, but I feel sometimes slowly."[85]

408.     In 2003, the Telomer Technical Workgroup, a subgroup of FFFC, lobbied for the exclusion of modern short-chain AFFF from the PFOA Emerging Contaminant Assessment ("ECA") process.[86] The workgroup argued, primarily, that Modern AFFF was not contributing to PFOA contamination.[87] In October 2003, US EPA agreed to exclude Modern AFFF from the PFOA ECA. Tom Cortina wrote to FFFC members that this was "a major victory for FFFC and the telomer-based AFFF industry. When we started this organization two years ago, the fate of telomer based AFFF was being tied directly to the fate of PFOA and the EPA had just told the military to start searching for alternative to AFFF."[88]

409.     As part of the agreement to exclude Modern AFFF from the PFOA ECA process, the FFFC agreed to "collect data on inventories of AFFF."[89]

---

[84] Sheinson, R., *Email to Carl Glover and Brian Bertold re: EC Governance Council Meeting Summary Memo,* NAVAL RESEARCH LABORATORY, (Nov. 6, 2007), https://www.documentcloud.org/documents/4341558-US00007858.html.
[85] *Id.*
[86] Cortina, T., *Email to Fire Fighting Foam Coalition Members re: ECA Plenary Meeting,* FIRE FIGHTING FOAM COALITION, (Oct. 30, 2003), https://www.documentcloud.org/documents/4341548-Korzeniowski-Cortina-Memo.html.
[87] *Id.*
[88] *Id.*
[89] *Id.*

FILED DATE: 4/5/2023 5:51 PM 2023L003355

410.    Shortly after speaking with US EPA, Tom Cortina was approached by 3M regarding the data to be collected.[90] "Mike Santoro of 3M spoke to me after both EPA meetings this week and expressed his concerns about the data we are planning to collect and his desire to work with us on this project."[91]

411.    Since 2003, and until very recently, DOD sites, FAA regulated airports, industrial facilities, and fire departments continued to use AFFF with little interference from governmental agencies.

412.    In the early 2000s, manufacturing companies began developing fluorine-free firefighting foams as environmentally friendly alternatives to AFFF.[92] Despite the tested potential, the FFFC publicly opposed the development of fluorine-free foams insisting that no other product could suppress fires the way AFFF can.[93] "[AFFF] are the most effective agents currently available to fight hydrocarbon fuel fires in military, industrial, and municipal settings. This is not an opinion, but a statement of fact that is not disputed by any respected fire protection professional."[94]

413.    After the phase out of PFOA and PFOS, the FFFC continued to emphasize the safety of the fluorosurfactants used in Modern AFFF. In a 2007 newsletter endorsed by Defendants Ansul, DuPont, Dynax, and Kidde, the FFFC stated Modern AFFF "do not contain or break down into [PFOS or PFOA]" but instead contain "fluorosurfactants that are persistent (which is a characteristic of fluorine-containing materials) but are not generally considered to be significant environmental toxins."[95] The FFFC further stated Modern AFFF is "not currently being considered

---

[90] *Id.*
[91] *Id.*
[92] *The Military is Spending Millions to Replace Toxic Firefighting Foam with Toxic Firefighting Foam, supra* note 33.
[93] *Id.*
[94] *Id.*
[95] *AFFF Update: Europe and Canada to Ban use of PFOS Foams,* FFFC, (May 2007), https://www.fffc.org/_files/ugd/331cad_40ba118b806d4d4b9e575acc8a542f35.pdf.

55

FILED DATE: 4/5/2023 5:51 PM  2023L003355

for regulation by environmental authorities in the US, Europe, or Canada and is expected to be available . . . for the foreseeable future."[96]

414.    Despite discovering additional information regarding the persistent, toxic, and bioaccumulative nature of fluorosurfactants used in Modern AFFF since 2003, neither the FFFC, nor any of its members, approached US EPA to revisit its decision to exclude Modern AFFF from the PFOA ECA process.

415.    The FFFC still exists today and purports to "focus on issues related to the efficacy and environmental impact of firefighting foams."[97]

416.    Current members of the FFFC are "AFFF manufacturers, fluorosurfactant manufacturers, and distributors."[98]

417.    At the time of filing this complaint, members of the FFFC include Defendants Ansul, Chemguard, Dynax, Fire Service, National Foam, Perimeter's products line Solberg, and Perimeter.[99]

418.    The FFFC's website calls the coalition "[t]he environmental voice for users and manufacturers of AFFF."[100]

419.    At the time of filing this Complaint, the FFFC asserts through its website and many publications that AFFF is safe and essential to fire suppression.[101] Specifically, the FFFC continues to argue that Modern AFFF does not contain any bioaccumulative or toxic components despite contradictory reports from government led studies. "Long-chain PFAS such as PFOS and PFOA

---

[96] *Id.*
[97] *About FFFC,* FIRE FIGHTING FOAM COALITION, (last visited March 2, 2023), https://www.fffc.org/.
[98] *Id.*
[99] *See id.*
[100] *Id.*
[101] *Id.*

FILED DATE: 4/5/2023 5:51 PM    2023L003355

are considered to be bioaccumulative and toxic, whereas the short-chain PFAS used in modern foams are not."[102]

420.    As recently as 2017, the FFFC asserted in an advertisement endorsed by Defendants Angus Fire, Ansul, Dynax, Chemguard, National Foam, Profoam, Chemours, and Fire Services Plus that "AFFF agents: are most effective to fight flammable liquid fires; provide superior extinguishment and burnback performance; have minimal environmental impact have a low toxicity and bioaccumulation profile; [and] contain short-chain (c6) fluorosurfactants that are approved by global regulatory agencies."[103]

421.    As recently as at least 2020, the FFFC continues to assert that AFFF and its breakdown products do not pose a human health or environmental impact. "Although PFHxA is classified as a PFAS substance and is persistent in the environment, it is considered low in toxicity and not bioaccumulative. Historically, persistence alone has not been a sufficient justification for restricting a substance."[104]

422.    The FFFC's Best Practice Guidance for Use of Class B Firefighting Foams states at the outset that "[i]t should be emphasized that it is not the intent of this guidance to limit or restrict the use of firefighting foam. The fire safety advantages of using foam are greater than the risks of potential environmental problems."[105]

---

[102] *AFFF Update,* FIRE FIGHTING FOAM COALITION, (May 2022), https://www.fffc.org/_files/ugd/4e7dd1_1094c12b88d34d708d5c23a417dc1a75.pdf.
[103] *Check the Facts,* FIRE FIGHTING FOAM COALITION, (2017), https://www.fffc.org/_files/ugd/331cad_511d12b6da55437a8b855a0e2ae39a1f.pdf.
[104] *AFFF Update: Proposed PFHxA REACH Restriction in Early Stages of Development,* FIRE FIGHTING FOAM COALITION, (Sept. 2020), https://www.fffc.org/_files/ugd/4e7dd1_78d58945fbb846a589f9e1acb6e205ad.pdf.
[105] *Best Practice Guidance for Use of Class B Firefighting Foams,* FIRE FIGHTING FOAM COALITION, (May 2016), https://www.fffc.org/_files/ugd/331cad_188bf72c523c46adac082278ac019a7b.pdf.

FILED DATE: 4/5/2023 5:51 PM 2023LA003355

423.    At the time of filing this Complaint, the FFFC continues to oppose the use of non-fluorosurfactant firefighting foams.[106]

424.    DuPont hired several consultants and paid them thousands of dollars to implement a company strategy to attack and discredit studies that alleged PFOA causes adverse health effects, to prevent third parties from connecting DuPont and its PFOA manufacturing to health problems, and to thwart PFOA-related litigation.

425.    In March and April 2003, DuPont employees and executives, including its CEO, Vice President, and General Manager of Fluoroproducts, and Haskell Laboratory Director, all made public statements denying they had seen any negative impacts on human health or the environment caused by DuPont's use of PFOA.

426.    During the early 2000s, *Chemical Week*, a magazine that serves the global chemical industry, published numerous articles quoting DuPont spokespersons on the safety of PFOA. These statements include the following: "PFOA is not harmful to human health or the environment, and there is a substantial volume of information to back that up."[107] "There is an extensive database of over 200 reports addressing all the major hazard end points. We have reviewed all of this data and there are no health effects associated with PFOA."[108] "Given the extremely small levels of PFOA exposure generally seen outside the work setting, it is my medical opinion that no association would be seen in the general public."[109]

---

[106] *AFFF Update: Response to the IPEN Paper on Fluorine-free Foams,* Fire Fighting Foam Coalition (April 2019), https://www.fffc.org/_files/ugd/331cad_073fb784906d4e818d1323c1e10ee8c5.pdf.
[107] Westervelt, R., *DuPont Faces EPA Action over PFOA Disclosure,* Chemical Week, (June 23, 2004).
[108] Sissel, K., *EPA Report Raises Concerns About PFOA,* Chemical Week, (Apr. 29, 2003).
[109] Sissel, K., *EPA PFOA Assessment Raises Questions,* Chemical Week, (Jan. 19, 2005).

FILED DATE: 4/5/2023 5:51 PM    2023L003355

427.    As late as March 2009, DuPont reviewed and approved issuance of a press release by the Sapphire Group, one of DuPont's consultants, which falsely claimed that PFOA in drinking water was completely safe, despite DuPont's knowledge about the toxicity of PFAS.

428.    Defendants AGCCA, Archroma, Arkema, Chemours, Clariant Corporation, and Daikin were members of the FluoroCouncil, a group formed to represent the interests of the world's leading manufacturers of fluorotechnology products.    In 2018, the FluoroCouncil announced a new website "that showcases information on the benefits and safety of fluorinated chemistries," despite the industry's knowledge of the toxicity of PFAS.    A blog post touting the new website noted that "Fluorinated chemistries, or per- and polyfluoroalkyl substances (PFAS), are a diverse group of chemistries characterized by the strong bond between fluorine and carbon. Fluorinated chemistries provide products with the resilience and durability they require, and such products can be used safely."[110]

429.    In 2019, the FluoroCouncil informed the U.S. EPA that short-chain PFAS, like PFHxA, are "widely understood not to present toxicity concerns" and that "studies show short-chain fluorotelomer-based products do not present significant adverse impacts."[111]

430.    Defendants, including at least 3M, continue to this day to deny the adverse effects on the environment and human health caused by AFFF Contamination.

431.    In 2015, 15 years after the voluntary phase out of PFOA, 3M spokesperson, Donna Fleming Runyon, denied that the company failed to properly warn users of the danger associated with AFFF usage. "3M's AFFF products were all sold with material safety data sheets, or MSDSs,

---

[110] Bowman, J., *New website provides information on the benefits and safety of fluorinated chemistries*, AMERICAN CHEMISTRY COUNCIL (Jan. 10, 2018), https://www.americanchemistry.com/chemistry-in-america/news-trends/blog-post/2018/new-website-provides-information-on-the-benefits-and-safety-of-fluorinated-chemistries.
[111] *Briefing to ERG/EPA ELG Program*, PFAS Overview, FLUOROCOUNCIL (Aug. 26, 2019) (EPA-H!-OW-2020-0099).

FILED DATE: 4/5/2023 5:51 PM  2023L003355

that advised how to handle and dispose of the product in a safe and effective manner."[112] Ms. Runyon continued to deny the danger associated with AFFF stating "[w]hen used properly, we believe AFFF was safe and effective. In fact, the products are widely credited with benefitting the military and civilian firefighters around the world. They are known in many cases to have saved lives."[113]

432.    In 2015, Dr. Carol A. Ley, vice president and corporate medical director for the 3M medical department stated that 3M believes "[PFAS], such as PFOS and PFOA, do not present health risks at levels they are typically found in the environment or in human blood. In more than 30 years of medical surveillance, we have observed no adverse health effects in our employees resulting from their exposure to [PFAS] such as PFOS and PFOA."[114]

433.    3M Spokesperson Fanna Haile-Selassie was quoted in a 2018 *Bloomberg* article saying that "[w]hile the science behind PFAS is complex, the vast body of scientific evidence, which consists of decades of research conducted by independent third parties and 3M does not show that PFOS or PFOA causes harm in people at current or historical levels."[115]

434.    In September 2019, 3M Senior Vice President Denise Rutherford appeared before the House Committee on Oversight and Reform's Environment Subcommittee and testified that she agreed with the statement: "[t]he weight of current scientific evidence does not show that PFOS or PFOA cause adverse health effects in humans at current rates of exposure."[116]

---

[112] Lerner, S., *Poisoning the Well: Toxic Firefighting Foam has Contaminated U.S. Drinking Water,* THE INTERCEPT, (Dec. 16, 2015), https://theintercept.com/2015/12/16/toxic-firefighting-foam-has-contaminated-u-s-drinking-water-with-pfcs/.
[113] *Id.*
[114] *Id.*
[115] Kary, T. and Cannon, C., *Cancer-linked Chemicals Manufactured by 3M are Turning up in Drinking Water*, BLOOMBERG (Nov. 2, 2018), https://www.bloomberg.com/graphics/2018-3M-groundwater-pollution-problem/?leadSource=uverify%20wall.
[116] Oversight Committee, *Rep. Ocasio-Cortez at PFAS Part 3*, YOUTUBE (Sept. 11, 2019), https://www.youtube.com/watch?v=1bZDyWTvSMs.

435.    As of the date of the filing of this Complaint, a website sponsored by Defendant 3M asserts that "the weight of scientific evidence does not show that PFOS or PFOA causes harm to the environment or people at current or historical levels."[117]

436.    Defendants have earned extraordinary profits from their PFAS-related business practices.

437.    Defendants did not inform any regulatory agency or the public about the toxic nature of PFAS for fear of losing the extraordinary profits from their PFAS manufacturing businesses.

438.    At all relevant times, Defendants, individually and/or collectively, have had the resources and ability to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

439.    At all relevant times, Defendants shared and/or should have shared among themselves, all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in the environment and in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

440.    Defendants have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research described in the preceding paragraph.

---

[117] *The Facts on PFAS, supra* note 4.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

441.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing the State from discovering the existence and extent of any harm as alleged herein.

442.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse environmental damage and health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in the environment and human blood.

443.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Illinois to the environmental, toxicological, medical, or other significant risks from AFFF Contamination.

444.    At all relevant times, Defendants encouraged the continued and even further increased use and release into the environment of AFFF, including into Illinois, by their customers and others, and tried to encourage and foster the increased and further use of AFFF, including in Illinois, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such use.

445.    Despite their explicit knowledge of the dangers of PFAS, Defendants deliberately and intentionally concealed the dangers of PFAS from governmental entities, including the State

FILED DATE: 4/5/2023 5:51 PM   2023L003355

of Illinois and its agencies, and the public at large to protect profits and avoid public responsibility for injuries and damage caused by their toxic products.

446.    Defendants' negligent, intentional, and reckless actions have contaminated and injured, and continue to contaminate and injure, the environment and natural resources of Illinois, harmed Illinois property, and placed Illinois residents at risk.

## V.    Historical DuPont's spinoff of The Chemours Company.

447.    Chemours was organized by DuPont in the state of Delaware on February 18, 2014 as Performance Operations, LLC, for the purpose of transferring to Chemours assets and liabilities, including any entities holding assets and liabilities, associated with certain of DuPont's Performance Chemicals segment. Chemours changed its name to The Chemours Company, LLC on April 15, 2014. The Chemours Company, LLC had nominal operations from February 18, 2014 through December 31, 2014. The Chemours Company, LLC was converted from a limited liability company to a Delaware corporation on April 30, 2015.[118]

448.    In July 2015, Historical DuPont transferred to The Chemours Company its "performance chemicals" business line, including titanium technologies, fluoroproducts, and chemical solutions.[119]

449.    In addition to the transfer of assets, The Chemours Company accepted broad assumption of many liabilities for Historical DuPont's historical use, manufacture, and discharge

---

[118] *See The Chemours Company SEC Information Statement*, SEC.GOV (June 5, 2015), https://www.sec.gov/Archives/edgar/data/1627223/000119312515215110/d832629dex991.htm.
[119] *See id.*

63

of PFAS, although the specific details regarding the liabilities that The Chemours Company assumed are set forth in the non-public schedules.[120]

450.    The transfer to The Chemours Company of Historical DuPont's performance chemicals business line, which was loaded with failing products and substantial debts, as well as many environmental liabilities from Historical DuPont, which were known by Historical DuPont to be extraordinarily large, resulted in a transfer in which The Chemours Company did not receive a reasonably equivalent value in exchange for the transfer or obligation.

451.    Further, the assets transferred to The Chemours Company were unreasonably small in relation to the business or transaction. Historical DuPont believed or reasonably should have believed that The Chemours Company would incur debts beyond its ability to pay them as they became due.

452.    At the time of those transfers, the performance chemicals business line carried an estimated debt and/or liabilities of approximately $4 billion.

453.    In 2015, prices of Titanium Dioxide plummeted, significantly decreasing the value of Historical DuPont's titanium technologies business line.[121]

454.    Historical DuPont had also promised to phase out production and use of PFOA, a major component of its fluoroproducts line, by 2015.

455.    Under the Separation Agreement, The Chemours Company agreed to indemnify Historical DuPont against, and assumed for itself, all "Chemours Liabilities," which is defined broadly to include, among other things, "any and all liabilities relating," "primarily to, arising

---

[120] *See generally, Separation Agreement by and between E. I. DuPont de Nemours and Company and The Chemours Company* (the "Separation Agreement"), E.I. DUPONT DE NEMOURS AND COMPANY AND THE CHEMOURS COMPANY (Jun. 26, 2015), https://www.sec.gov/Archives/edgar/data/30554/000003055415000065/exhibit21separationagreeme.htm.
[121] *See, e.g.,* Sanati, C., *How DuPont Spinoff Chemours Came Back from the Brink,* FORTUNE (May 18, 2016), https://fortune.com/2016/05/18/how-dupont-spinoff-chemours-came-back-from-the-brink/.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

primarily out of or resulting primarily from, the operation of or conduct of the [Performance Chemicals] Business at any time." This indemnification is uncapped and does not have a survival period.[122]

456.    The Chemours Company agreed to indemnify Historical DuPont against and assume for itself the Performance Chemical Business's liabilities regardless of: (a) when or where such liabilities arose; (b) whether the facts upon which they are based occurred prior to, on, or subsequent to the effective date of the spinoff; (c) where or against whom such liabilities are asserted or determined; (d) whether arising from or alleged to arise from negligence, gross negligence, recklessness, violation of law, fraud, or misrepresentation by any member of the Historical DuPont group or the Chemours group; and (e) which entity is named in any action associated with any liability.[123]

457.    The Chemours Company agreed to indemnify Historical DuPont from, and assume all, environmental liabilities that arose prior to the spinoff if they were "primarily associated" with the Performance Chemicals Business.[124]  Such liabilities were deemed "primarily associated" if Historical DuPont reasonably determined that 50.1% of the liabilities were attributable to the Performance Chemicals Business.[125]

458.    The Chemours Company also agreed to use its best efforts to be fully substituted for Historical DuPont with respect to "any order, decree, judgment, agreement or Action with respect to Chemours Assumed Environmental Liabilities . . . ."[126]

---

[122] *See* Separation Agreement, *supra* note. 120, at 11.
[123] *Id.* at 53–65 (Article VI—Indemnification).
[124] *Id.* at 7, 53–65 (Article VI—Indemnification).
[125] *Id.*
[126] *Id.* at 63.

FILED DATE: 4/5/2023 5:51 PM  2023L003365

FILED DATE: 4/5/2023 5:51 PM     2023L003355

459.     At the time of the July 2015 spinoff, Historical DuPont was well aware of its potential liabilities related to AFFF Contamination throughout the United States.

460.     Until the spinoff was complete, The Chemours Company was a wholly owned subsidiary of Historical DuPont.  Although The Chemours Company had a separate board, the board was controlled by Historical DuPont employees.

461.     Once the spinoff was complete, seven new members of The Chemours Company board were appointed, for an eight-member board of directors of the new public company.  The negotiations concerning the spinoff were conducted and the related decisions were made while the board was still controlled by Historical DuPont.

462.     The new independent board appointed upon the completion of the spinoff did not take part in the negotiations of the terms of the separation.

463.     In 2005, Historical DuPont agreed to pay $16.5 million to resolve eight counts brought by the U.S. EPA alleging violations of the Toxic Substances Control Act and the Resource Conservation and Recovery Act concerning the toxicity of PFAS.[127]  At the time, it was the largest such penalty in history.[128]

464.     Also in 2005, Historical DuPont settled a class action lawsuit filed on behalf of 70,000 residents of Ohio and West Virginia for $343 million.[129]  Under the terms of the 2005 class action settlement, Historical DuPont agreed to fund a panel of scientists to determine if any diseases were linked to PFOA exposure, to filter local water for as long as C-8 (*i.e.*, long-chain PFAS) concentrations exceeded regulatory thresholds, and to set aside $235 million for ongoing

---

[127] *See Reference News Release: EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History*, U.S. ENV'T. PROT. AGENCY (DEC. 14, 2005), https://www.epa.gov/archive/epapages/newsroom_archive/newsreleases/fdcb2f665cac66bb852570d7005 d6665.html.
[128] *Id.*
[129] *See* Settlement Agreement in *Leach v. E.I DuPont de Nemours and Co.*, No. 01-C-608 (W. Va. Cir. Ct.).

medical monitoring of the affected community.[130]  This panel was known as the C-8 Science Panel and is discussed above and herein.

465.    After eight years, the C-8 Science Panel found several significant diseases, including cancer, with a probable link to PFOA.[131]

466.    Thereafter, more than 3,500 personal injury claims were filed in Ohio and West Virginia as part of the 2005 settlement that were consolidated into a multidistrict litigation court in Ohio (the Ohio MDL).[132]

467.    As The Chemours Company explained in its November 2016 SEC filing: "[s]ignificant unfavorable outcomes in a number of cases in the [Ohio] MDL could have a material adverse effect on Chemours consolidated financial position, results of operations or liquidity."[133]

468.    Juries in three bellwether trials returned multimillion-dollar verdicts against Historical DuPont, awarding compensatory damages and, in two cases, punitive damages to plaintiffs who claimed that PFOA exposure caused their illnesses.[134]

469.    On February 13, 2017, Historical DuPont and The Chemours Company agreed to pay $671 million to resolve the Ohio MDL.[135]

---

[130] *Id.*

[131] *See* Nicole, W., *PFOA and Cancer in a Highly Exposed Community: New Findings for the C8 Science Panel,* ENV'T HEALTH PERSPECTIVES, (Jan. 1, 2013), https://ehp.niehs.nih.gov/doi/10.1289/ehp.121-A340#:~:text=The%20C8%20Science%20Panel%20studied%2055%20health%20outcomes,current%20st udy%20came%20out%20of%20the%20panel%E2%80%99s%20work.

[132] *See In re: E.I. du Pont de Nemours and Co. C-8 Personal Injury Litig.*, No. 1-13-MD-2433 (S.D. Ohio).

[133] *See The Chemours Company SEC Form 10-Q Quarterly Report,* U.S. SECURITIES AND EXCHANGE COMMISSION, at 22 (Nov. 2016), http://d18rn0p25nwr6d.cloudfront.net/CIK-0001627223/595eddb7-8814-4221-a013-d8e5c2fabea3.pdf.

[134] *See* Teichert, E., *Jury orders DuPont to pay $10.5 million over leaked chemical,* REUTERS (Jan. 5, 2017), https://www.reuters.com/article/us-du-pont-verdict/jury-orders-dupont-to-pay-10-5-million-over-leaked-chemical-idUSKBN14P1VD.

[135] Maher, K. and McWhirter, C., *DuPont Settlement of Chemical Exposure Case Seen as "Shot in the Arm" for Other Suits,* THE WALL STREET JOURNAL (Feb. 13, 2017), https://www.wsj.com/articles/dupont-chemours-settle-teflon-chemical-exposure-case-for-671-million-1486987602.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

470.    The Chemours Company also agreed to pay $25 million for future PFOA costs not covered by the settlement for each of the next five years (up to an additional $125 million).[136]

471.    Historical DuPont also agreed to cover additional amounts up to $25 million for five years.[137]

472.    At the time of the transfer of its Performance Chemicals Business to The Chemours Company, Historical DuPont had been sued, threatened with suit, and/or had knowledge of the likelihood of litigation to be filed regarding Historical DuPont's liability for damages and injuries from the manufacture of PFAS and products that contain PFAS.

473.    The Chemours Company also assumed the obligation to clean-up Pompton Lakes, New Jersey, where Historical DuPont manufactured explosives from 1902 to 1994, and where lead salts, mercury, volatile organic compounds, explosive powders, chlorinated solvents, and detonated blasting caps still contaminate groundwater and soil.  The Chemours Company's SEC filings estimate that the remediation, which began in 1985, may cost as much as $119 million to complete.[138]

474.    Creating The Chemours Company and engaging in the above-described corporate machinations was an attempt to segregate a large portion of Historical DuPont's environmental liabilities, including liabilities related to its PFAS.

475.    Through the consolidation of Historical DuPont's performance chemical liabilities, DuPont has attempted to limit the availability of funds arising out of—and necessary to pay damages for—that DuPont's liability.

---

[136] *See DowDupont Inc. SEC Form 10-Q Quarterly Report*, DOWDUPONT, INC., at 43 (Nov. 6, 2017), https://www.sec.gov/Archives/edgar/data/1666700/000166670017000026/dowdupont3q17093017.htm.
[137] *Id.*
[138] *Id.* at 23.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

VI.    **Illinois' actions to protect human health and the environment from AFFF Contamination.**

476.    AFFF Contamination poses a serious threat to human health and Illinois' natural resources and property.

477.    Pursuant to 35 Ill. Adm. Code 620.605, the Illinois EPA shall issue a Health Advisory when there is a confirmed detection in a community water supply well of a chemical substance for which no numeric groundwater standard exists. The health-based guidance levels contained in a Health Advisory represent concentrations in drinking water at which no adverse health effects are expected to occur. A Health Advisory can be issued in the absence of standards under Section 620.410, groundwater quality standards, and when "the chemical substance is toxic or harmful to human health."

478.    The Illinois EPA must consider the guidance level established in a Health Advisory when (1) establishing "groundwater cleanup or action levels whenever there is a release or substantial threat of a release of... [a] hazardous substance or pesticide... or [o]ther contaminant that represents a significant hazard to public health or the environment;" (2) determining "whether the community water supply is taking its raw water from a site or source consistent with the [applicable] siting and source water requirements;" and (3) developing Illinois Pollution Control Board ("Board") "rulemaking proposals for new or revised numerical standards."[139]

479.    On January 28, 2021, the Illinois EPA announced Health Advisory Levels for PFBS, PFHxS, PFHxA, and PFOA.[140] On April 16, 2021, the Illinois EPA announced a new Health Advisory Level for PFOS and a revised level for PFBS because the U.S. EPA updated its

---

[139] 35 Ill. Admin. Code Section 620.601.

[140] *See Illinois EPA Issues Health Advisories for Per- and Polyfluoroalkyl Substances (PFAS_ in Accordance with Illinois Groundwater Regulations*, ILLINOIS ENV'T PROT. AGENCY, https://www.illinois.gov/news/press-release.22728.html (last visited Nov. 29, 2022).

FILED DATE: 4/5/2023 5:51 PM    2023L003355

Provisional Peer-Reviewed Toxicity Value for PFBS.[141]  On July 27, 2021, the Illinois EPA

announced a new Health Advisory Level for PFNA.

480.    All PFAS currently subject to Illinois EPA Health Advisory Levels are related to

AFFF.

481.    The current Illinois EPA Health Advisory Levels are listed below.

| Specific PFAS | Health Advisory Level in Nanograms/Liter parts per trillion ("ppt") | Chemical Abstract Services Registry Number (CASRN) |
|---|---|---|
| PFOA | 2 | 335-67-1 |
| PFHxA | 560,000 | 307-24-4 |
| PFOS | 14 | 1763-23-1 |
| PFHxS | 140 | 355-46-4 |
| PFBS | 2,100 | 375-73-5 |
| PFNA | 21 | 375-95-1 |

482.    On May 12, 2021, the Illinois EPA presented to stakeholders and solicited

comments regarding updated proposed amendments to the 35 Ill. Adm. Code 620 groundwater

quality standards, as a Pre-Filing Public Comment Period.  Among other things, the proposed

amendments included groundwater quality standards for five PFAS: PFBS, PFHxS, PFOA, PFNA,

and PFOS. On December 8, 2021, the Illinois EPA filed with the Illinois Pollution Control Board

a Motion for Acceptance requesting that the Board accept the proposed groundwater quality

---

[141] *See Illinois Issues Health Advisory for Perfluorooctanesulfonic Acid (PFOS) and an Updated Health Advisory for Perfluorobutanesulfonic Acid (PFBS)*, ILLINOIS ENV'T PROT. AGENCY (Apr. 16, 2021), https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=23151.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

standards for six PFAS: PFBS, PFHxS, PFOA, PFNA, PFOS, and HFPO-DA.[142]  Five of these

compounds are associated with AFFF. The proposed standards are listed below:

| Specific PFAS | Proposed Class I and Class II Groundwater Quality Standard in Nanograms/Liter (ppt) | Chemical Abstract Services Registry Number (CASRN) |
|---|---|---|
| PFOA | 2 | 335-67-1 |
| PFNA | 12 | 375-95-1 |
| PFOS | 7.7 | 1763-23-1 |
| PFHxS | 77 | 355-46-4 |
| PFBS | 1,200 | 375-73-5 |
| HFPO-DA | 12 | 13252-13-6 |

483.    On August 6, 2021, Public Act 102-0290 (also known as The PFAS Reduction Act)

was signed into law in Illinois "to minimize PFAS exposure to humans and reduce PFAS releases

into the environment."[143]  Public Act 102-0290 limits the use of AFFF within Illinois by placing

reporting, disposal, and use requirements on AFFF.  *See* 415 ILCS 170/1 *et seq.*

484.    Under Public Act 102-0290, "AFFF may not be used by a person, local government,

fire department, or state agency for training or testing purposes unless the fire authority has

---

[142]    *See     620     Groundwater     Quality*, ILLINOIS     ENV'T     PROT.     AGENCY, https://www2.illinois.gov/epa/topics/water-quality/groundwater/Pages/620-Groundwater-Quality.aspx, (last visited Nov. 29, 2022).

[143] *Fact Sheet: Firefighting Foam and PFAS*, STATE OF ILLINOIS OFFICE OF STATE FIRE MARSHAL and ILLINOIS ENV'T PROT. AGENCY, (January 2022), https://www2.illinois.gov/epa/topics/water-quality/pfas/Documents/FirefightingFoamandPFAS-FINAL.pdf; *see also Per- and Polyfluoroalkyl Substances     (PFAS)*, ILLINOIS     ENV'T     PROT.     AGENCY, (last     updated     2023) https://www2.illinois.gov/epa/topics/water-quality/pfas/Pages/default.aspx.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

performed all the following:

1) Evaluated the testing facility for containment treatment, and disposal measures to prevent uncontrolled release of Class B firefighting foam to the environment;

2) Notified [the Illinois Emergency Management Agency] of the AFFF discharge or release within 48 hours; and

3) Provided training to employees of the possible hazards, protective actions, and a disposal plan."[144]

485. Public Act 102-0290 also placed regulations upon AFFF manufacturers and distributors including reporting requirements which provide fire departments information "clearly indicating that:

- The product contains PFAS that may be hazardous to health or the environment;

- The use of the product is regulated and restricted under this Act; and

- Other Class B firefighting foam options may be available for purchase."

486. Public Act 102-0290 "strongly discourag[es the use of AFFF] for several reasons" including health impacts to firefighters, including cancer, and soil, groundwater, and drinking water contamination.[145]

487. Unless AFFF Contamination is actively cleaned up from contaminated natural resources and property under the jurisdiction of the State, these chemicals will remain within the State and continue to contaminate and injure natural resources and property under the jurisdiction of the State indefinitely.

---

[144] *Id.* at 2.
[145] *Id.*

FILED DATE: 4/5/2023 5:51 PM    2023L003355

## VII.    Illinois' investigation of the AFFF Contamination crisis.

488.    In tandem with the Illinois EPA's establishment of PFAS Health Advisory Levels and AFFF regulations, Illinois EPA has implemented an aggressive PFAS sampling plan.

489.    Illinois EPA recently conducted a statewide investigation into the prevalence and occurrence of PFAS in finished water at 1,428 entry points to the distribution system representing 1,749 community water supplies ("CWSs") across Illinois.[146]

490.    The expenditures to conduct the CWS investigation would not have been necessary absent Defendants' sale and dissemination of PFAS into the State of Illinois, which, when used as intended, would inevitably contaminate natural resources and endanger people, animals, and the environment.

491.    Illinois EPA analyzed eighteen PFAS compounds as part of this investigation.[147] This includes PFAS compounds associated with AFFF, including PFOA, PFOS, PFNA, and PFHxS.

492.    Of the 1,428 entry points sampled, Illinois EPA detected levels of PFAS that were greater than or equal to Illinois' Health Advisory Levels at 70 entry points. Confirmation sampling confirmed levels above the Health Advisory Levels at 68 of those 70 entry points. Those entry points with elevated levels of PFAS, as defined in paragraphs 15-17 herein, are referred to as "PFAS Sites."

493.    Some of the AFFF Contamination Sites include the following:

---

[146] *See PFAS Statewide Investigation Network: Community Water Supply Sampling*, ILLINOIS ENV'T PROT. AGENCY, https://epa.illinois.gov/topics/water-quality/pfas/pfas-statewide-investigation-network.html (last visited Apr. 5, 2023).
[147] *Id.*

FILED DATE: 4/5/2023 5:51 PM   2023L003355

**Des Plaines River Near O'Hare Airport – Cook County, Illinois**

494.    Chicago O'Hare International Airport ("O'Hare Airport") has been the main federally regulated international airport serving the Chicago area since 1955.

495.    In 2019, O'Hare Airport averaged 2,520 flights per day, making it the busiest airport in the world, in part because of the large number of regional flights.

496.    The Des Plaines River is a river flowing southward through southern Wisconsin and Illinois, eventually meeting the Kankakee River to form the Illinois River.

497.    The Illinois River is a tributary to the Mississippi River.

498.    The Des Plaines River flows directly east of O'Hare Airport with the closest airport property boundary less than one mile from the Des Plaines River.

499.    Two creeks, Willow Creek and Crystal Creek, run through O'Hare Airport and feed directly into the Des Plaines River approximately 0.5 miles from the airport property boundary.

500.    The State of Illinois has conducted a preliminary investigation into potential sources of AFFF Contamination of the Des Plaines River, including a review of spatial, topographic, and aerial maps; a review of US EPA and Illinois EPA documents and databases; a review of AFFF usage or evidence of large Class B fires in the area; a review of O'Hare Airport's AFFF onsite training and use; a review of O'Hare Airport's various permits; and a search of news sources to identify potential AFFF sources.

501.    The State's preliminary investigation has shown that there are numerous instances of AFFF release and usage at O'Hare Airport that would have contributed to AFFF contamination in the Des Plaines River and Willow Creek.

502.    O'Hare Airport's current and historical NPDES permits allow for direct discharges into Crystal Creek, Willow Creek, and the Des Plaines River.

74

FILED DATE: 4/5/2023 5:51 PM · 2023L003355

503.     Various facilities throughout the airport, including the newly constructed multi-modal facility, are equipped with AFFF sprinkler systems.

504.     O'Hare Airport operates three onsite rescue stations which must carry AFFF.

505.     Six fire stations operate in the vicinity of O'Hare Airport.

506.     There have been numerous documented instances of AFFF usage to suppress fires at O'Hare Airport, including during a large fire in 2020.

507.     In 1999, AFFF was accidentally released into the Des Plaines River and Willow Creek from the United Airlines Hangar at O'Hare Airport.

508.     Foam from accidental releases of AFFF has been noted in both Willow Creek and Des Plaines River.

509.     The Chicago O'Hare Burn Pit, located within 1,500 feet of Willow Creek on the northern side of O'Hare Airport's property, was historically used for AFFF firefighting training.

510.     AFFF contaminated soil was removed from O'Hare Airport by the airport and United States Ecology during construction of a new runway.

511.     Based on the State's preliminary review, AFFF Contamination is present within the Des Plaines River and Willow Creek.

512.     Based on the State's preliminary review, O'Hare Airport is a suspected source of AFFF contamination in both the Des Plaines River and Willow Creek.

**Wood River CWS – Madison County, Illinois**

513.     The Wood River CWS is located in Madison County, Illinois.

514.     Illinois EPA sampled the Wood River CWS and detected PFOA greater than or equal to the Illinois Health Advisory.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

515.    Illinois EPA also found PFOS, PFHxA, PFHxS, and PFBS greater than or equal to the minimum reporting level at Wood River CWS.

516.    The State of Illinois has conducted a preliminary investigation into potential sources of AFFF Contamination at the Wood River CWS, including a review of spatial, topographic, and aerial maps; a review of US EPA and Illinois EPA documents and databases; a review of AFFF usage or evidence of large Class B fires in the area; and a search of news sources to identify potential AFFF sources.

517.    The State's preliminary investigation has shown that there are several potential sources of AFFF Contamination near the Wood River CWS.

518.    Phillips Conoco 66 Refinery ("Phillips Refinery") is located within 1 mile of the Wood River CWS intake well.

519.    Located on a 2,200-acre property, Phillips Refinery processes crude oil and manufacturers aviation fuel and other petroleum products as Illinois' largest oil refinery.

520.    Phillips Refinery has had numerous documented large-scale fires and explosions, employs its own firefighting team, and has two foam pumpers inside the plant for firefighting purposes.

521.    The most recent Phillips Refinery fire occurred in 2019 after an explosion onsite.

522.    The City of Wood River's municipal fire department uses Class B firefighting foams, including AFFF, on local fires.

523.    The City of Wood River's municipal fire department carries Class B firefighting foams, including AFFF, on their trucks and stores AFFF at the department.

524.    Upon information and belief, AFFF was used to suppress the 2019 fire at Phillips Refinery.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

525.    In 2021, another explosion and oil fire occurred at a metal fabricator located within 3 miles of the Wood River CWS intake well.

526.    Upon information and belief, AFFF was also used to suppress the 2021 fire.

527.    Other potential sources of AFFF contamination within close proximity to the Wood River CWS include petroleum bulk storage facilities, fuel transfer stations, petroleum lubricating oil and grease manufacturer, and a nitrogen refinery.

528.    Based on the State's preliminary investigation, the People have concluded that AFFF contamination is present within the Wood River CWS.

**Channahon CWS – Will County, Illinois**

529.    The Channahon CWS is located in Will County, Illinois, has six active water supply wells, and serves approximately 12,833 people.

530.    Illinois EPA sampled the Channahon CWS and detected PFOA greater than or equal to the Illinois Health Advisory.

531.    Illinois EPA also found PFOS, PFHxA, and PFBS greater than or equal to the minimum reporting level at Channahon CWS.

532.    The State of Illinois has conducted a preliminary investigation into potential sources of AFFF Contamination at the Channahon CWS, including a review of spatial, topographic, and aerial maps; a review of US EPA and Illinois EPA documents and databases; a review of AFFF usage or evidence of large Class B fires in the area; and a search of news sources to identify potential AFFF sources.

533.    The State's preliminary investigation has shown that there are several potential sources of AFFF Contamination near the Channahon CWS.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

534. Two large refineries, Exxon Mobil Joliet Refinery and Flint Hills Refinery, are located within 1.5 miles of Channahon CWS well intakes.

535. A historic AFFF spill was recorded by the National Response Center at the Exxon Mobil Joliet Refinery.

536. A Dow Chemical facility located within 2 miles of the Channahon well intakes holds an NPDES permit that includes discharges related to fire monitoring testing.

537. The Joliet Army Munitions Plant is a retired United States Army arsenal located within 5-miles of the Channahon well intakes.

538. While in operation, the Joliet Army Munitions Plant manufactured, assembled, stored, packaged, and loaded munitions and the chemical constituents of munitions, propellants, and explosives.

539. While in operation, the Joliet Army Munitions Plant had two private onsite fire stations and an onsite training area while in operation.

540. A fire station is located within 2 miles of the Channahon well intakes.

541. Based on the State's preliminary investigation, the People have concluded that AFFF contamination is present within the Wood River CWS.

**Peoria Illinois America CWS – Peoria County, Illinois**

542. The Peoria Illinois America CWS is located in Peoria County, Illinois.

543. Illinois EPA sampled the Peoria Illinois America CWS and detected PFOA greater than or equal to the Illinois Health Advisory.

544. Illinois EPA also found PFOS, PFHxA, PFHxS, and PFBS greater than or equal to the minimum reporting level at Peoria Illinois America CWS.

FILED DATE: 4/5/2023 5:51 PM   2023L003355

545.    The State of Illinois has conducted a preliminary investigation into potential sources of AFFF Contamination at the Peoria Illinois America CWS, including a review of spatial, topographic, and aerial maps; a review of US EPA and Illinois EPA documents and databases; a review of AFFF usage or evidence of large Class B fires in the area; and a search of news sources to identify potential AFFF sources.

546.    The State's preliminary investigation has shown that there are several suspected sources of AFFF Contamination near the Peoria Illinois America CWS.

547.    The Peoria Fire Training Academy conducts firefighting training, including AFFF training, 0.3 miles north of an active Peoria Illinois America CWS well field.

548.    There are numerous fire stations located less than one mile from active Peoria Illinois America CWS wells.

549.    There are additional fire stations located within one to three miles of the Peoria Illinois America CWS wells.

550.    Local fire departments near the Peoria Illinois America wells are reported to use AFFF for fire suppression and training regularly.

551.    The Peoria International Airport, Peoria Air National Guard, and Illinois Army National Guard are also located within three miles of six active Peoria America Illinois CWS wells.

552.    Upon information and belief, AFFF was used or stored at the Peoria International Airport, Peoria Air National Guard, and Illinois Army National Guard sites.

553.    Other potential AFFF sources near Peoria Illinois America CWS include an inactive Naval Reserve Training Center, oil and gas operations, and mining manufacturing companies.

554.    Based on the State's preliminary investigation, the People have concluded that AFFF contamination is present within the Peoria Illinois America CWS.

**Mancuso Village Park MHP CWS – Winnebago County, Illinois**

555.    The Mancuso Village Park Mobile Home Park CWS ("Mancuso CWS") is located in Winnebago County, Illinois.

556.    Illinois EPA sampled the Mancuso CWS and detected PFOA greater than or equal to the Illinois Health Advisory.

557.    Illinois EPA also found PFHxA and PFHxS greater than or equal to the minimum reporting level at Mancuso CWS.

558.    The State of Illinois has conducted a preliminary investigation into potential sources of AFFF Contamination at the Mancuso CWS, including a review of spatial, topographic, and aerial maps; a review of US EPA and Illinois EPA documents and databases; a review of AFFF usage or evidence of large Class B fires in the area; and a search of news sources to identify potential AFFF sources.

559.    The State's preliminary investigation has shown that there are several suspected sources of AFFF Contamination near the Mancuso CWS.

560.    Chicago Rockford International Airport, a federally regulated airport with a history of AFFF usage for onsite, is located within approximately 1.5 of the Mancuso CWS well intakes.

561.    The Chicago Rockford Airport Burn Pit was used for firefighting training, including AFFF training, and is located within 1.3 miles of the Mancuso CWS well system.

562.    A City of Rockford Fire Department is located within one mile of the Mancuso CWS well intake.

563.    Upon information and belief, the City of Rockford Fire department uses AFFF to suppress Class B fires and stores AFFF at the department.

80

FILED DATE: 4/5/2023 5:51 PM   2023L003355

564.    Based on the State's preliminary investigation, the People have concluded that AFFF contamination is present within the Mancuso CWS.

## VIII.    State natural resource and property damage.

565.    AFFF Contamination at the CWSs identified above and additional locations yet to be determined has injured the State's natural resources and/or adversely impacted its beneficial public trust uses including those for drinking water, recreation, fishing, agriculture, and other uses.

566.    AFFF Contamination at the CWSs identified above and additional locations yet to be determined has substantially damaged the intrinsic value of these State natural resources.

567.    Illinois and its residents have been deprived of the full use, enjoyment, and benefit of the State's public trust resources, and the intrinsic value of such State natural resources, and have been substantially harmed by AFFF Contamination, as identified above.

568.    The State's natural resources and property will continue to be harmed and injured for the foreseeable future by the ongoing release and/or spread of AFFF Contamination, as identified above.

569.    Defendants' acts and/or omissions have caused and/or contributed to cause AFFF Contamination, as identified above.

570.    Each of the State's natural resources is inherently precious, limited, and invaluable in and of itself and to humans, as described in more detail below.

### Groundwater.

571.    The State's public policy for groundwater is set forth in Section 2 of the Illinois Groundwater Protection Act.

(a)    The General Assembly finds that:

81

(i) a large portion of Illinois' citizens rely on groundwater for personal consumption, and industries use a significant amount of groundwater;

(ii) *contamination of Illinois groundwater will adversely impact the health and welfare of its citizens and adversely impact the economic viability of the State*;

(iii) contamination of Illinois' groundwater is occurring;

(iv) *protection of groundwater is a necessity for future economic development in this State.*

(b)     Therefore, it is the *policy of the State of Illinois to restore, protect, and enhance the groundwaters of the State, as a natural and public resource*. The State recognizes the essential and pervasive role of groundwater in the social and economic well-being of the people of Illinois, and its vital importance to the general health, safety, and welfare. It is further recognized as consistent with this policy that the groundwater resources of the State be utilized for beneficial and legitimate purposes; *that waste and degradation of the resources be prevented*; and *that the underground water resource be managed to allow for maximum benefit of the people of the State of Illinois.*

415 ILCS 55/2 (2020) (emphasis added).

572.     Groundwater resources can be exposed to AFFF Contamination in several ways, including when infiltrating precipitation transports surface contaminants from soils through the unsaturated zone and into shallow groundwater.

573.     Defendants have contaminated and injured the State's groundwater, relied upon by some of the waterways and CWSs identified above, and additional locations yet to be determined with AFFF Contamination.

574.     Defendants have contaminated and injured surface water and groundwater resources at the waterways and CWSs as identified above, and additional locations yet to be determined, with AFFF Contamination.

575.     Ongoing additional testing continues to reveal further AFFF Contamination and injury of groundwater around the State. It is virtually certain that this additional testing will reveal further AFFF Contamination of, and injury to, groundwater.

82

FILED DATE: 4/5/2023 5:51 PM     2023L003355

**Surface waters.**

576.    Section 11 of the Act provides, 415 ILCS 5/11 (2020), provides, in pertinent part, as follows:

§ 11. (a) The General Assembly finds:

(1) that pollution of the waters of this State constitutes a menace to public health and welfare, creates public nuisances, is harmful to wildlife, fish, and aquatic life, impairs domestic, agricultural, industrial, recreational, and other legitimate beneficial uses of water, depresses property values, and offends the senses;

    *              *              *

(c) The provisions of this Act authorizing implementation of the regulations pursuant to an NPDES program shall not be construed to limit, affect, impair, or diminish the authority, duties and responsibilities of the Board, Agency, Department or any other governmental agency or officer, or of any unit of local government, to regulate and control pollution of any kind, to restore, to protect or to enhance the quality of the environment, or to achieve all other purposes, or to enforce provisions, set forth in this Act or other State law or regulation.

577.    Surface waters are precious, limited, and invaluable State natural resources that are used for drinking water, irrigation, recreation such as swimming and fishing, and ecological and other important purposes.

578.    State natural resources, including surface waters, are vital to the health, safety, and welfare of Illinois residents, and to the State's economy and ecology.

579.    Surface waters, such as lakes, rivers, and wetlands, can receive groundwater inflow and recharge groundwater. The movement of water between groundwater and surface-water systems leads to the mixing of their water qualities.

580.    Defendants have contaminated and injured the State's surface waters, relied upon by some of the waterways and CWSs identified above, and additional locations yet to be determined with AFFF Contamination.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

581. Defendants have contaminated and injured drinking water that is drawn from surface water sources in locations at the waterways and CWSs identified above and additional locations yet to be determined with AFFF Contamination.

582. Ongoing additional testing continues to reveal further AFFF Contamination and injury of surface waters at and around waterways and CWSs in the State. It is virtually certain that additional testing will reveal further AFFF Contamination in, and injury to, surface waters.

**Wetlands.**

583. Wetlands are highly productive, biologically diverse, precious, limited, and invaluable State natural resources that enhance water quality, control erosion, maintain stream flows, sequester carbon, and provide a home to more than forty percent of all threatened and endangered species in Illinois.

584. Wetlands play an important role in drinking water, irrigation, agriculture, and other important purposes.

585. State natural resources, including wetlands, are vital to the health, safety, and welfare of Illinois residents, and to the State's economy and ecology.

586. Wetlands can receive groundwater inflow and recharge groundwater. The movement of water between groundwater and surface-water systems such as wetlands can lead to the mixing of their water qualities.

587. Multiple areas in and near the waterways and CWSs identified above are listed on the National Wetlands Inventory.

588. Defendants have contaminated and injured the State's wetlands around the waterways and CWSs identified above and additional locations yet to be determined with AFFF Contamination.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

589.    Defendants have contaminated and injured drinking water that is drawn from groundwater and surface waters with hydrological connections to wetlands in locations around the CWSs identified above and additional locations yet to be determined with AFFF Contamination.

590.    Ongoing additional testing will reveal further AFFF Contamination and injury of wetlands around the waterways and CWSs identified above and additional locations yet to be determined.    It is virtually certain that this additional testing will reveal further AFFF Contamination of, and injury to, wetlands.

### Wildlife, aquatic life, soils, and sediment.

591.    Wildlife, aquatic life, soil, and sediments are precious, limited, and invaluable State natural resources.

592.    Defendants have contaminated and injured the State's wildlife, aquatic life, soil, and sediments around the CWSs identified above and additional locations yet to be determined.

593.    Agriculture is one of Illinois' largest industries, contributing billions annually to Illinois' economy.

594.    Illinois' wildlife and aquatic life are used for food and recreational purposes and provide a significant economic benefit to the State, including through tourism and recreation.

595.    Injuries to wildlife and aquatic life affect not only individual wildlife, but also the entire ecosystem of which they are a part.

596.    Ongoing additional testing continues to reveal further AFFF Contamination and injury of agricultural operations, wildlife, aquatic life, soils, and sediment at and around the waterways and CWSs identified above and additional locations yet to be determined. It is virtually certain that this additional testing will reveal further AFFF Contamination of, and injury to, soils, sediments, and wildlife and aquatic life.

85

IX.    **The AFFF Contamination caused by Defendants must be addressed.**

597.    Illinois' environment and natural resources are currently, or may in the future be, detrimentally affected by Defendants' AFFF pollution of the State's natural resources and AFFF Contamination as described herein.

598.    Proven and preliminary remedial techniques exist for cleaning up AFFF Contamination in environmental media and for successfully treating drinking water.

599.    Without remediation and treatment methods, AFFF Contamination will continue to spread through the natural resources and property under the jurisdiction of the State. Although AFFF Contamination is persistent in the environment, AFFF Contamination can be successfully remediated and impacts to natural resources can be restored and compensated at significant expense.

600.    AFFF Contamination levels in State natural resources including surface water, groundwater, drinking water, and wetlands typically fluctuate (*i.e.*, increase and decrease) over time as AFFF Contamination moves through water and by other factors that impact hydrology, such as changes in seasonal precipitation levels. Because AFFF Contamination levels can fluctuate at a single AFFF contamination site over time, the only way to be certain that AFFF Contamination no longer exist in State natural resources, such as surface water, groundwater, drinking water, and wetlands, and to restore those natural resources is to remediate or treat the AFFF Contamination.

601.    The presence and migration of AFFF Contamination in State natural resources and property, absent large-scale and costly remediation and/or treatment, will continue indefinitely and will continue to indefinitely threaten such natural resources and property.

86

FILED DATE: 4/5/2023 5:51 PM     2023L003355

602.    Because of the injury AFFF Contamination have caused and are causing to State natural resources, Defendants must remediate AFFF Contamination and restore these natural resources, and the State is entitled to compensation for interim and permanent losses to its natural resources, as well as any costs it incurs in restoring its natural resources.

603.    The People reserve their right to amend this Complaint as additional evidence of AFFF Contamination comes to light including, but not limited to, AFFF Contamination of wildlife, aquatic life, waters, soils, sediments, and other State natural resources arising from/related to Defendants' pollution of the State's natural resources and AFFF Contamination at and around the CWSs identified above and additional location yet to be determined, as described herein.

## CLAIMS ALLEGED

### COUNT I
### NEGLIGENCE
### (Against All Defendants)

604.    The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

605.    Defendants had a duty to the State to exercise due care in designing, manufacturing, marketing, distributing, promoting, selling, testing, labeling, warning, and instructing on the use and disposal of AFFF.

606.    Defendants breached their duty of care in that they negligently, carelessly, and/or recklessly acted or failed to act in designing, manufacturing, marketing, distributing, promoting, selling, testing, labeling, warning, and instructing on the use and disposal of AFFF and AFFF-containing waste that have been used and/or disposed of in the State in such a manner as to directly and proximately cause AFFF Contamination of the State's property and its surface waters, groundwater, drinking water, wetlands, fish, wildlife, aquatic life, marine resources, soil, sediment,

87

FILED DATE: 4/5/2023 5:51 PM    2023L003355

air, and other natural resources, thereby causing a threat to human health and the environment, despite their years-long knowledge that AFFF Contamination chemicals persist in the environment and are harmful to human health and the environment.

607.    Defendants further were grossly negligent because they failed to exercise even slight care, placing revenue and profit generation above human and environmental health and safety.

608.    Defendants' conduct was wanton, willful, and showed a reckless disregard or conscious indifference for the rights and safety of the State and its residents.

609.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State has suffered monetary losses and damages in amounts to be proven at trial.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants' actions alleged herein constituted, and continue to constitute, a negligent act;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the waterways and CWSs identified above and additional locations yet to

88

FILED DATE: 4/5/2023 5:51 PM  2023L003355

be determined, interest on the damages according to law, and any other relief necessary to remedy AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined;

(c) ordering the Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the damage caused by its negligent acts; and

(d) granting such other and further relief as this Court deems appropriate and just.

## COUNT II
## TRESPASS
## (Against All Defendants)

610. The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

611. Defendants knew with substantial certainty that their acts and omissions would contaminate the State's property and its surface waters, groundwater, drinking water, wetlands, wildlife, aquatic life, marine resources, soil, sediment, air, and other natural resources with AFFF manufactured, distributed, marketed, or sold by Defendants.

612. The AFFF and fluorosurfactants to be used in AFFF manufactured by Defendants contaminated the State's property and its surface waters, groundwater, drinking water, wetlands, fish, wildlife, marine resources, soil, sediment, air, and other natural resources and constitutes an unauthorized direct and immediate physical intrusion of property of which the State is a trustee.

613. The trespass of AFFF Contamination alleged herein has varied over time and has not ceased.

614. AFFF and fluorosurfactants intended to be used in the manufacture of AFFF manufactured, marketed, distributed, sold, released, disposed of, handled, supplied, transported, and/or used by the Defendants continues to be located on or in the State's property and its surface

89

FILED DATE: 4/5/2023 5:51 PM    2023L003355

water, groundwater, drinking water, wetlands, wildlife, aquatic life, marine resources, soil, sediment, and other natural resources.

615.    Defendants are liable for trespass.

616.    The State has not consented to and does not consent to the trespass alleged herein.

617.    The State has significant property rights and interests in the natural resources of the State, including, without limitation, the State's public trust and *parens patriae* interests and authority. The ownership of and title to all wild birds and wild mammals within the jurisdiction of the State of Illinois are declared to be in the State of Illinois. 520 ILCS 5/2.1 (2020).

618.    The ownership of and title to all aquatic life within the boundaries of the State of Illinois are declared to be in the State of Illinois. 515 ILCS 5/5-5 (2020).

619.    As trustee of the State's natural resources, the State is authorized to take action to protect those natural resources as if the State is the owner of the property on which those natural resources are located.

620.    The State has a duty to protect, enhance, and restore the environment, its natural resources and to protect the health and welfare of its inhabitants.

621.    The State has *parens patriae* power to represent the interests of the People to protect, enhance, and restore the environment, its natural resources and to protect the health and welfare of its inhabitants.

622.    Accordingly, the State is bringing this action for the invasion of its exclusive possessory interests in the State's natural resources, in addition to its residents' interest in the integrity of the State's natural resources.

623.    As long as the State's property and natural resources remain contaminated due to Defendants' conduct, the trespass continues.

624.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, the State and its residents have suffered monetary losses and damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants' actions alleged herein constituted, and continue to constitute, a trespass;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the CWSs identified above and additional locations yet to be determined, interest on the damages according to law, and any other relief necessary to remedy AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined;

(c) ordering the Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the trespass; and

(d) granting such other and further relief as this Court deems appropriate and just.

91

FILED DATE: 4/5/2023 5:51 PM   2023L003355

## COUNT III
## PUBLIC NUISANCE
### (Against All Defendants)

625.　The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

626.　The Illinois Constitution provides the People of the State of Illinois a common right to a healthful environment. ILL. CONST. ARTICLE XI, § 1 (1970).

627.　Defendant, by its actions, caused an unreasonable and substantial interference with the public health and welfare and the environment and has obstructed the public's free use and comfortable enjoyment of Illinois' natural resources for commerce, navigation, fishing, recreation, and aesthetic enjoyment. To wit, by its conduct, alleged herein, Defendants have, through their actions, manufactured, distributed, or sold AFFF or fluorosurfactants used in the manufacture of AFFF and caused the use, storage, and disposal of AFFF in a way that has caused the pollution of the surface waters, groundwater, drinking water, wetlands, fish, wildlife, marine resources, soil, sediment, air, and other natural resources that are relied upon and surround the CWSs identified above and additional locations yet to be determined.

628.　An ordinary person would be reasonably annoyed or disturbed by the presence of AFFF Contamination that endangers the health of fish, animals, and humans and degrades surface waters, groundwater, drinking water, wetlands, fish, wildlife, marine resources, soil, sediment, air, and other natural resources.

629.　As a consequence of its actions, as alleged herein, Defendants have created and maintained, and continue to create and maintain, a public nuisance at common law.

630.　Defendants' conduct caused and continues to cause harm to the State and its residents.

631. As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State has suffered monetary losses and damages in amounts to be proven at trial.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that the Defendants' actions alleged herein constituted a common law public nuisance;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the waterways and CWSs identified above and additional locations yet to be determined, interest on the damages according to law, and any other relief necessary to remedy Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined;

(c) enjoining Defendants from further acts constituting a common law public nuisance;

(d) ordering Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the common law public nuisance; and

(e) granting such other and further relief as this Court deems appropriate and just.

93

FILED DATE: 4/5/2023 5:51 PM     2023L003355

FILED DATE: 4/6/2023 5:51 PM   2023L003355

## COUNT IV
### STRICT PRODUCTS LIABILITY – FAILURE TO WARN
#### (Against All Defendants)

632.   The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

633.   Defendants were engaged in the business of testing, developing, designing, researching, formulating, manufacturing, distributing, promoting, marketing, and selling AFFF.

634.   As formulators, manufacturers, distributors, marketers, promoters, and/or sellers of AFFF, as defined herein, Defendants had a duty to warn the State of Illinois, the public, public officials, consumers, and users of AFFF of the environmental and health risks posed by AFFF Contamination.

635.   AFFF and/or fluorosurfactants used in the manufacture of AFFF manufactured, marketed, sold, distributed, and supplied by the Defendants is defective and unreasonably dangerous products and pose significant risks to human health and the environment.

636.   At all times relevant to this action, Defendants' AFFF and fluorosurfactants intended to be used for AFFF were used and disposed of in a manner in which they were reasonably foreseeably intended to be used.

637.   Defendants' AFFF was distributed and used as intended or in a manner that was reasonably foreseeable by the Defendants or should have been reasonably foreseeable by Defendants.

638.   Defendants' AFFF reached consumers and the environment in a condition substantially unchanged from that in which it left the Defendants' control.

639.   Defendants' AFFF was not reasonably safe at the time it left Defendants' control because it lacked adequate warnings and instructions.

94

FILED DATE: 4/6/2023 5:51 PM 2023L003355

640.    Without adequate warnings or instructions, Defendants' AFFF and fluorosurfactants intended to be used in AFFF were unsafe to an extent beyond that which would be contemplated by an ordinary person.

641.    Defendants knew that by failing to warn the State of Illinois, the public, public officials, consumers, and users of AFFF of the risks posed by AFFF, their AFFF and fluorosurfactants intended to be used in AFFF would be purchased, transported, stored, handled, used, and disposed of without users and consumers being aware of the hazards that AFFF Contamination poses to human health and the environment.

642.    At the time of manufacture, Defendants could have provided warnings or instructions regarding the full and complete risks of their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF because they knew, and should have known, of the unreasonable risks of harm associated with the use, exposure to, and/or disposal of AFFF.

643.    Despite this knowledge, Defendants represented, asserted, claimed, and warranted that their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF were safe for their intended and foreseeable uses and disposal, and did not require any special handling or precautions.

644.    Defendants could have warned the public about the risks of their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF but failed to do so and intentionally concealed information to maximize their profits.

645.    Defendants knew, or should have known, that use of their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF would result in the discharge, disposal, emission, release, or spillage of AFFF, as defined herein, into the surface water, wetlands, groundwater, soil, and sediments of the State of Illinois.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

646.    Defendants breached their duty to warn by unreasonably failing to provide the State of Illinois, the public, public officials, consumers, and users of AFFF and fluorosurfactants intended to be used in the manufacture of AFFF with warnings regarding the potential and/or actual threat to human health and the environment caused by AFFF Contamination, despite Defendants' vast amount of knowledge and research demonstrating that AFFF Contamination presented threats to human health and the environment.

647.    At all times relevant to this litigation, Defendants had either actual or constructive knowledge that their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF were hazardous to the State of Illinois' natural resources and property, including knowledge that: (i) AFFF Contamination is released into the environment through the normal and foreseeable use of AFFF products, use of fluorosurfactants in AFFF manufacturing processes, and disposal of AFFF contaminated waste; (ii) when released into the environment, AFFF Contamination persists over long periods of time and is resistant to biodegradation and bioremediation; (iii) AFFF Contamination bioaccumulates in humans and wildlife; (iv) AFFF Contamination can move and migrate great distances in both surface water and groundwater; and (v) AFFF Contamination poses significant risks to human health and the environment, even at very low levels.

648.    Plaintiff could not have reasonably discovered the defects and risks associated with Defendants' AFFF and fluorosurfactants intended to be used in the manufacture of AFFF before or at the time the AFFF Contamination was released into the environment into the State of Illinois, absent sufficient warnings.

649.    As a result of the Defendants failure to warn about the unreasonably dangerous conditions of their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF, Defendants are strictly liable to Plaintiff.

FILED DATE: 4/5/2023 5:51 PM    2023L003355

650.   As a direct and proximate result of the Defendants failure to warn about the unreasonably dangerous conditions of the AFFF and fluorosurfactants to be used in the manufacture of AFFF, the State of Illinois has incurred and will continue to incur costs and damages related to AFFF Contamination of the State's property and its surface waters, groundwater, drinking water, wetlands, fish, wildlife, aquatic life, marine resources, soil, sediment, air, and other natural resources, thereby causing a threat to human health and the environment.

651.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State and its residents have suffered monetary losses and damages in amounts to be proven at trial.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants failed to warn Plaintiff about the unreasonably dangerous conditions of AFFF;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the CWSs identified above and additional locations yet to be determined, interest on the damages according to law, and any other relief necessary to remedy AFFF

FILED DATE: 4/5/2023 5:51 PM   2023L003355

Contamination at and around the CWSs identified above and additional locations yet to be determined;

(c) ordering the Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the damage caused by its negligent acts; and

(d) granting such other and further relief as this Court deems appropriate and just.

## COUNT V
### STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### (Against All Defendants)

652.    The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

653.    Defendants were engaged in the business of testing, developing, designing, researching, formulating, manufacturing, distributing, promoting, marketing, and selling AFFF.

654.    As formulators, manufacturers, distributors, marketers, promotors, and/or sellers of AFFF and fluorosurfactants intended to be used in the manufacture of AFFF, Defendants owed a duty to all persons whom Defendants' AFFF and fluorosurfactants intended to be used in AFFF manufacture might foreseeably harm, including the State of Illinois and its citizens, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

655.    Defendants represented, asserted, claimed, and warranted that their AFFF and fluorosurfactants intended to be used in the manufacture of AFFF were safe for their intended and foreseeable uses.

656.    At all times relevant to this action, Defendants' AFFF and fluorosurfactants intended to be used in AFFF were used and disposed of in a manner in which they were reasonably foreseeably intended to be used.

98

FILED DATE: 4/5/2023 5:51 PM    2023L003355

657.    Defendants' AFFF and fluorosurfactants intended to be used in AFFF manufacture were distributed and sold as intended or in a manner that was reasonably foreseeable by the Defendants or should have been reasonably foreseeable by Defendants.

658.    Defendants' AFFF and fluorosurfactants intended to be used in AFFF were not reasonably safe as designed at the time they left Defendants' control.

659.    Defendants' AFFF and fluorosurfactants intended to be used in AFFF reached consumers and the environment in a condition substantially unchanged from that in which they left the Defendants' control.

660.    Defendants knew, or should have known, that use of their AFFF and fluorosurfactants used to manufacture AFFF would result in the discharge, disposal, emission, release, or spillage of AFFF, as defined herein, into the surface water, wetlands, groundwater, soil, and sediments of the State of Illinois.

661.    When Defendants placed their AFFF and fluorosurfactants intended to be used to manufacture AFFF into the stream of commerce in the State of Illinois, they were defective in design, unreasonably dangerous, and not reasonably suited for their intended, foreseeable, and ordinary storage, handling, and uses because: (i) AFFF Contamination was released into the environment through the normal and foreseeable use of AFFF, use of fluorosurfactants in the AFFF manufacturing processes, and disposal of AFFF waste; (ii) when released into the environment, AFFF Contamination persists over long periods of time and is resistant to biodegradation and bioremediation; (iii) AFFF Contamination bioaccumulates in humans and wildlife; (iv) AFFF Contamination can move and migrate great distances in both surface water and groundwater; and (v) AFFF Contamination poses significant risks to human health and the environment, even at very low levels.

662. Defendants failed to inform manufacturers, users, consumers, intermediaries, the State of Illinois, and any party that could have effectively reduced the risk of harm related to using AFFF and fluorosurfactants intended to be used in the manufacture of AFFF's character and the care required to use and dispose of the product safely.

663. The harm caused by Defendants' AFFF and fluorosurfactants intended to be used in the manufacture of AFFF far outweighed its benefits, rendering these products dangerous to an extent beyond that which an ordinary consumer would contemplate.

664. The seriousness of the environmental and human health risk posed by Defendants' AFFF and fluorosurfactants intended to be used in the manufacture of AFFF far outweighs any purported social utility of Defendants' conduct in manufacturing, selling, distributing, and marketing their AFFF and concealing the dangers posed to human health and the environment.

665. Plaintiff could not have reasonably discovered the defects and risks associated with Defendants' AFFF and fluorosurfactants intended to manufacture AFFF before or at the time the AFFF Contamination was released into the environment into the State of Illinois. In fact, Defendants intentionally hid this critical information from the public.

666. At all relevant times, Defendants knew or should have known about the availability and/or possibility that there were reasonably safer and feasible alternatives to using their AFFF.

667. Notwithstanding, Defendants continued to manufacture, market, distribute, promote, and sell AFFF and fluorosurfactants intended to manufacture AFFF despite such knowledge and despite the foreseeable and known harms to maximize their profits.

668. As a result of the unreasonably dangerous conditions of the AFFF and fluorosurfactants intended to manufacture AFFF, Defendants are strictly liable to Plaintiff.

669. As a direct and proximate result, the State of Illinois has incurred and will continue

to incur costs and damages related to AFFF Contamination of the State's property, surface waters, groundwater, drinking water, wetlands, fish, wildlife, aquatic life, marine resources, soil, sediment, air, and other natural resources, thereby causing a threat to human health and the environment.

670.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State and its residents have suffered monetary losses and damages in amounts to be proven at trial.

671.    WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants' AFFF and fluorosurfactants intended to be used in the manufacture of AFFF were defectively designed;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the waterways and CWSs identified above and additional locations yet to be determined, interest on the damages according to law, and any other relief necessary to remedy AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined;

(c) ordering the Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the damage caused by its negligent acts; and

(d) granting such other and further relief as this Court deems appropriate and just.

### COUNT VI
### CIVIL CONSPIRACY
### (Against All Defendants)

672.     The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

673.     As alleged herein, Defendants entered into agreements and organized groups, such as the FFFC and FluoroCouncil, to promote the interests of the world's leading manufacturers of AFFF.

674.     In furtherance of the agreements and organized groups entered into by various Defendants, Defendants committed the tortious acts described in the Seventh, Eighth, Tenth, Eleventh, and Twelfth Causes of Action set forth herein.

675.     By participating in agreements and organized groups, such as the FFFC and FluoroCouncil, Defendants planned, assisted, or encouraged the tortious acts described in the Seventh, Eighth, Tenth, Eleventh, and Twelfth Causes of Action set forth herein.

676.     Defendants, through agreements and organized groups, such as the FFFC and FluoroCouncil, engaged in a civil conspiracy and are responsible for damages caused by AFFF Contamination discovered in the State's property and its surface waters, groundwater, drinking water, wetlands, fish, wildlife, aquatic life, marine resources, soil, sediment, air, and other natural resources, which has caused and continues to cause a threat to human health and the environment.

677.     As a result of Defendants' civil conspiracy, the State and its residents have suffered monetary losses and damages in amounts to be proven at trial.

FILED DATE: 4/5/2023 5:51 PM     2023L003355

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants' actions alleged herein constituted, and continue to constitute, a civil conspiracy to commit tortious acts;

(b) holding Defendants jointly and severally liable for all past and future natural resource damages, loss-of-use damages, response activity costs, costs of investigation, costs of testing and monitoring, costs of providing water from an alternate source, costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches wells, costs of restoring natural resources contaminated by AFFF including groundwater, surface waters, soils, sediments, and other natural resources, where appropriate, costs of remediating AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined, where appropriate, any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the waterways and CWSs identified above and additional locations yet to be determined, interest on the damages according to law, and any other relief necessary to remedy AFFF Contamination at and around the waterways and CWSs identified above and additional locations yet to be determined;

(c) ordering the Defendants to immediately undertake the necessary action that will result in a final and permanent abatement of the damage caused by their civil conspiracy to commit tortious acts; and

(d) granting such other and further relief as this Court deems appropriate and just.

### COUNT VII
### COMMON LAW PROHIBITION ON UNJUST ENRICHMENT
### (Against All Defendants)

678.     The People repeat, re-allege, and incorporate by reference each and every allegation

contained in paragraphs 1 through 603 above, as though fully set forth herein.

679.    Defendants have knowingly and unjustly retained a benefit to the State of Illinois' detriment.

680.    Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

681.    By continuing to manufacture, market, distribute, sell, handle, supply, transport, and/or use AFFF and fluorosurfactants intended to be used in the manufacture of AFFF in a manner that has resulted in the release and disposal of AFFF Contamination even though the Defendants were aware that AFFF Contamination is hazardous to human health and the environment, Defendants have unjustly enriched themselves at the State's expense.

682.    Because of Defendants' failure to make the People of Illinois, manufacturers, users, consumers, intermediaries, and any party that could have effectively reduced the risk of harm related to using AFFF and fluorosurfactants intended to be used in the manufacture of AFFF aware of the harmful nature of AFFF, and Defendants' manufacturing, marketing, distributing, selling, handling, supplying, transporting, and/or using AFFF and fluorosurfactants intended to be used in the manufacture of AFFF in a manner that has resulted in the AFFF Contamination, Defendants obtained enrichment they would not have otherwise obtained.

683.    Defendants' enrichment was without justification and the State lacks a remedy provided by law.

684.    Unjust enrichment arises not only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss.

685.    The State has incurred, and continues to incur, substantial costs related to investigating and responding to AFFF Contamination at and around the waterways and CWSs

FILED DATE: 4/5/2023 5:51 PM    2023L003355

identified above and additional locations yet to be identified. These costs were a necessary expenditure to address AFFF Contamination in the State of Illinois and protect Illinois' residents, environment, and natural resources.

686.    Defendants have received a benefit from the State's response activities because Defendants should bear the cost of investigating and cleaning up the contamination caused by or related to the manufacturing, marketing, distributing, selling, handling, supplying, transporting, and/or using AFFF and fluorosurfactants intended to be used in the manufacture of AFFF in a manner that has resulted in the release and disposal of AFFF and AFFF contaminated water and waste into and around the waterways and CWSs identified above and additional locations yet to be determined.

687.    Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergency of the sort that the State would reasonably expect to occur and is not part of the normal and expected costs of the State's existence. The State alleges wrongful acts which are neither discrete nor of the sort that can reasonably be expected.

688.    The State has incurred expenditures for relief over and above the State's ordinary services.

689.    The principles of justice and established common law require Defendants to reimburse the State for performing a duty properly owed by Defendants as a result of its conduct, as alleged herein.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) finding that Defendants were unjustly enriched through the manufacture, sale, or distribution of AFFF and fluorosurfactants intended to be used in the manufacture of AFFF;

105

FILED DATE: 4/5/2023 5:51 PM     2023L003355

(b) awarding compensatory damages in an amount sufficient to fairly and completely compensate the State for all damages;

(c) awarding disgorgement or compensation for Defendants' unjust enrichment of profits which directly result from the wrongful acts described above;

(d) entering a declaratory judgment requiring Defendants to abate the statutory violations alleged above, trespass, and public nuisance caused by the AFFF Contamination; and

(e) granting such other and further relief as this Court deems appropriate and just.

## COUNT VIII
### RESTORATION OF AQUATIC LIFE AND WILDLIFE UNDER THE FISH AND WILDLIFE CODES
(Against All Defendants)

690.    The People repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

691.    The ownership of and title to all wild birds and wild mammals within the jurisdiction of the State of Illinois is declared to be in the State of Illinois. 520 ILCS 5/2.1 (2020).

692.    The ownership of and title to all aquatic life within the boundaries of the State of Illinois is declared to be in the State of Illinois. 515 ILCS 5/5-5 (2020).

693.    Section 1-130 of the Fish Code, 515 ILCS 5/1-130 (2020), provides as follows:

Cooperation with EPA. The Department is authorized to cooperate with the Environmental Protection Agency of the State of Illinois in making pollution investigations and reports of pollution investigations.

694.    Section 1.5 of the Wildlife Code, 520 ILCS 5/1.5 (2020) provides as follows:

The Department is authorized to cooperate with the Environmental Protection Agency of the State of Illinois in making pollution investigations and making reports thereof.

106

FILED DATE: 4/5/2023 5:51 PM    2023L003355

695.    Section 1.50 of the Fish Code, 515 ILCS 5/1-150 (2020), provides, in pertinent part,

as follows:

> Preservation of aquatic life; actions to enforce Code. The Department shall take all
> measures necessary for the conservation, distribution, introduction, and restoration
> of aquatic life. * * * The Department shall also bring or cause to be brought actions
> and proceedings, in the name and by the authority of the People of the State of
> Illinois, to enforce this Code, including administrative rules, and to recover any and
> all fines and penalties provided for. * * *

696.    Section 1.20 of the Fish Code, 515 ILCS 5/1-20 (2020), provides in pertinent part,

the following definition:

> "Aquatic life" means all fish, mollusks, crustaceans, algae, aquatic plants, aquatic
> invertebrates, and any other aquatic animals or plants that the Department identifies
> in rules adopted after consultation with biologists, zoologists, or other wildlife
> experts. * * *

697.    Section 5-5 of the Fish Code, 515 ILCS 5/5-5 (2020), provides, in pertinent part, as

follows:

> If any person causes any waste, sewage, thermal effluent, or any other pollutant to
> enter into, or causes or allows pollution of, any waters of this State so as to kill
> aquatic life, the Department, through the Attorney General, may bring an action
> against that person and recover the value of and the related costs in determining the
> value of the aquatic life destroyed by the waste, sewage, thermal effluent, or
> pollution. Any money so recovered shall be placed into the Wildlife and Fish Fund
> in the State Treasury.

698.    Section 1-70 of the Fish Code, 515 ILCS 5/1-70 (2020), provides the following

definition:

> "Person" includes the plural "persons", females as well as males, and shall extend
> and be applied to clubs, associations, corporations, firms, and partnerships as well
> as individuals.

699.    Each Defendant is a "person" as that term is defined in Section 1-70 of the Code,

515 ILCS 5/1-70 (2020).

700.    Section 1.10 of the Wildlife Code, 520 ILCS 5/1-10 (2020), provides, in pertinent part, as follows:

> The Department shall take all measures necessary for the conservation, distribution, introduction and restoration or birds and mammals.  The Department also shall bring or cause to be brought, actions and proceedings, in the name, and by the authority, of the People of the State of Illinois, to enforce the provisions of this Act, including administrative rules, and to recover any and all fines and penalties hereinafter provided for. * * *

701.    Defendants, as described above, had control of the research and information concerning the hazardous nature of the AFFF and fluorosurfactants used to manufacture AFFF they manufactured, and the care required to use and dispose of the products safely.

702.    Defendants, as described above, had control of the information and whether to pass instructions on the proper storage, use, and handling of AFFF to manufacturers, users, consumers, intermediaries, and any party that could have effectively reduced the risk of harm related to using AFFF and fluorosurfactants intended to be used in AFFF.

703.    Defendants knew that failing to provide instructions on the proper storage, use, and handling of AFFF to the manufacturers, users, consumers, and intermediaries, would cause or allow AFFF Contamination within waters of the State.

704.    Defendants, through their acts and omissions as described above, and by failing to provide information to AFFF users, consumers, and intermediaries, despite Defendants' knowledge of the intended use and disposal of AFFF, caused or allowed AFFF Contamination to be released from locations at and around surface waters relied upon by the waters identified above and additional locations yet to be determined and adversely affected the aquatic life, wildlife, habitat, and natural resources at and around surface waters relied upon by the People.

705.    By causing or allowing the release of AFFF from locations at and around surface waters relied upon by the People as identified above and additional locations yet to be determined,

Defendants adversely affected the aquatic life in waters that constitute, can impact, and can be impacted by surface waters relied upon in the waterways and CWSs identified above and additional locations yet to be determined by reducing food supplies, lowering water quality, leaving the remaining aquatic life population less able to respond to adverse conditions, and reducing the breeding population.

706.    By causing or allowing the release of AFFF from locations at and around waters relied upon by the People as identified above and additional locations yet to be determined, Defendants caused the death of aquatic life in waters that constitute, can impact, and can be impacted by surface waters relied upon in the waterways and CWSs identified above and additional locations yet to be determined and is liable for the value of the aquatic life lost and the related costs in determining the value of the aquatic life destroyed by the release of AFFF Contamination pursuant to Section 5-5 of the Fish Code, 515 ILCS 5/5-5 (2020).

707.    As a result of their conduct as alleged herein, Defendants are thus liable for the value of the adverse impact on aquatic life and the related costs in determining the value of the aquatic life adversely impacted by AFFF Contamination, pursuant to Section 5-5 of the Fish Code, 515 ILCS 5/5-5 (2020).

708.    Pursuant to Section 1-150 of the Fish Code, 515 ILCS 5/1-150 (2020), and Section 1.10 of the Wildlife Code, 520 ILCS 5/1-10 (2020), Defendants are also liable for the restoration of the aquatic life in and the wildlife dependent upon the waters that constitute, can impact, and can be impacted by surface waters relied upon in the waterways and CWSs identified above and additional locations yet to be determined.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

FILED DATE: 4/5/2023 5:51 PM    2023L003355

(a) finding that Defendants have caused the death and destruction of aquatic life in waters that constitute, can impact, and can be impacted by waterways and CWSs identified above and additional locations yet to be determined, have adversely affected the aquatic life present in waters that constitute, can impact, and can be impacted by the waterways and CWSs identified above and additional locations yet to be determined, and have adversely affected the wildlife dependent upon the waters that constitute, can impact, and can be impacted by the waterways and CWSs identified above and additional locations yet to be determined;

(b) ordering the Defendants to pay the Illinois Department of Natural Resources to conduct an assessment of injury and damage determination relative to restoring the aquatic life, wildlife, habitat, and other natural resources lost or destroyed at and around surface waters relied upon by the People as identified above and additional locations yet to be determined, and to compensate the Illinois Department of Natural Resources for injury and damage to aquatic life, wildlife, habitat, and other natural resources lost or destroyed in the Mississippi River System at and around the waterways and CWSs identified above and additional locations yet to be determined pursuant to Section 1-150 of the Fish Code, 515 ILCS 5/1-150 (2020), and Section 1-10 of the Wildlife Code, 520 ILCS 5/1-10 (2020); and

(c) granting such other relief as this court deems appropriate and just.

## COUNT IX
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT
### (Against All Defendants)

709.    The People repeat, re-allege, and incorporate by reference each allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

710.    While engaged in trade or commerce, the Defendants have committed unfair and/or deceptive acts or practices, with the intent that others rely on the deceptive acts and

FILED DATE: 4/5/2023 5:51 PM    2023L003355

practices, declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by engaging in and employing the acts and practices alleged herein, including:

(a) Failing to disclose to users and consumers the material facts that the use and disposal of AFFF are associated with known environmental and health risks such as liver damage, altered cholesterol levels, pregnancy-induced hypertension and/or preeclampsia, thyroid disease, modulation of the immune system, decreased fertility, decreases in birth weight, and cancer.

(b) Misrepresenting, directly or by implication, that AFFF they designed, developed, manufactured, marketed, distributed, sold, and/or supplied was safe and did not create any environmental or health risks.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) Finding that Defendants have violated Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by the unlawful acts and practices alleged herein;

(b) Preliminarily and permanently enjoining the Defendants, their agents, employees, and all other persons and entities, corporate or otherwise, in active concert or participation with any of them, from engaging in the deceptive and unfair acts and practices alleged herein;

(c) Requiring full restitution be made to all Illinois consumers impacted by Defendants deceptive and unfair acts and practices, including for all AFFF that Defendants designed, developed, manufactured, marketed, distributed, sold, and/or supplied;

(d) Assessing a civil penalty of up to $50,000 per deceptive or unfair act or practice and an additional amount of $50,000 for each act or practice found to have been committed with intent to defraud, as provided in Section 7 of the Consumer Fraud Act, 815 ILCS 505/7;

111

FILED DATE: 4/5/2023 5:51 PM    2023L003355

(e) Ordering Defendants to pay all costs for the prosecution and investigation of this action, as provided by 815 ILCS 505/10; and

(f) Granting such other and further relief as the Court deems equitable and proper.

**COUNT X**
**VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT**
**(Against Defendants Historical DuPont; Corteva, Inc.; E.I. DuPont de Nemours, Inc.; and The Chemours Company)**

711.    The People repeat, re-allege, and incorporate by reference each allegation contained in paragraphs 1 through 603 above, as though fully set forth herein.

712.    Under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/5 (2020):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

713.    The "IUFTA Defendants," *i.e.*, Historical DuPont, Corteva, Inc., E.I. DuPont de Nemours, Inc., and The Chemours Company, have: (a) acted with actual intent to hinder, delay, and defraud parties; and/or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of The Chemours Company were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

112

FILED DATE: 4/5/2023 5:51 PM   2023L003355

714.    The IUFTA Defendants engaged in acts in furtherance of a scheme to transfer Historical DuPont's assets out of the reach of parties such as the State of Illinois that have been damaged as a result of the IUFTA Defendants' conduct, omissions, and actions described herein.

715.    It is primarily Historical DuPont, rather than The Chemours Company, that, for decades, manufactured, marketed, distributed, and/or sold AFFF and/or fluorosurfactants intended to be used in the manufacture of AFFF with the superior knowledge that they were toxic, mobile, persistent, bio-accumulative, and biomagnifying, and through normal and foreseen use, would impact the State natural resources.

716.    As a result of the transfer of assets and liabilities described herein, the IUFTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacturing, marketing, distribution, and/or sale of AFFF and fluorosurfactants intended to be used in the manufacture of AFFF.

717.    At the time of the transfer of its Performance Chemicals Business to The Chemours Company, Historical DuPont had been sued, threatened with suit, and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacturing, marketing, distribution, and/or sale of AFFF and/or fluorosurfactants intended to be used in the manufacture of AFFF.

718.    The IUFTA Defendants acted without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Historical DuPont believed or reasonably should have believed that The Chemours Company would incur debts beyond The Chemours Company's ability to pay as they became due.

719.    At all times relevant to this action, the claims, judgments, and potential judgments against The Chemours Company potentially exceeded The Chemours Company's ability to pay.

720.    Pursuant to 740 ILCS 160/8 (2020), the State seeks avoidance of any transfer of Historical DuPont liabilities for the claims brought in this Complaint and to hold the IUFTA Defendants liable for any damages or other remedies that may be awarded by the Court or jury under this Complaint.

721.    The State further seeks all other rights and remedies that may be available to it under the IUFTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate the State for the damages and injuries it has suffered as alleged herein.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court enter an Order:

(a) Allowing Plaintiff to avoid any transfer of Historical DuPont liabilities for the claims brought in this Complaint;

(b) Holding the IUFTA Defendants liable for any damages or other remedies that may be awarded by the Court or jury under this Complaint; and

(c) Awarding all other rights and remedies that may be available to Plaintiff under the IUFTA, including prejudgment remedies as available under applicable law, as may be necessary to fully compensate the People of the State of Illinois for the damages and injuries it has suffered as alleged herein.

## REQUEST FOR RELIEF

WHEREFORE, in addition to the relief requested in each individual Cause of Action listed above, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, seeks judgment in its favor and against Defendants for:

FILED DATE: 4/5/2023 5:51 PM   2023L003355

FILED DATE: 4/5/2023 5:51 PM    2023L003355

A.  Compensatory damages arising from AFFF Contamination and injury of State natural resources and property, including groundwater, surface waters, wetlands, drinking water supplies, biota, wildlife, aquatic life, and their associated soils, sediments, and uses, and other State natural resources and property, according to proof, including, but not limited to:

a.  natural resource damages;

b.  loss-of-use damages;

c.  past and future response activity costs;

d.  costs of investigation;

e.  costs of testing and monitoring;

f.  costs of providing water from an alternate source;

g.  costs of installing and maintaining approved drinking water treatment systems;

h.  costs of installing and maintaining an early warning system to detect AFFF Contamination before it reaches any drinking water intakes;

i.  costs of remediating AFFF Contamination from natural resources and restoration of these natural resources, including groundwater, surface waters, wetlands, soils, sediments, and other natural resources;

j.  remedial action at and around the waterways and CWSs identified herein and additional locations yet to be determined, including cleanup of AFFF Contamination;

k.  any other costs or other expenditures incurred to address AFFF Contamination and injury at and around the waterways and CWSs identified herein and additional locations yet to be determined; and

FILED DATE: 4/5/2023 5:51 PM   2023L003355

l.    interest on the damages according to law;

B. Injunctive relief to address past, present, and future AFFF Contamination by:

    a.  ordering Defendants to implement a program of ongoing public outreach and information-sharing efforts to provide effective communication to the public and local units of government regarding the status and progress of response activities related to AFFF Contamination in the State of Illinois;

    b.  ordering Defendants to institute protective measures to prevent endangerment to human health and the environment including, but not limited to: (a) sampling for AFFF Contamination in drinking water using U.S. EPA-approved Method 537 version 1.1, as written, including any modifications allowed therein, or any subsequent U.S. EPA-approved method; (b) connection to municipal drinking water supplies that are free of AFFF Contamination; and (c) provision and maintenance of drinking water treatment systems, including regular sampling;

    c.  ordering Defendants to complete the investigation, characterization, and remediation of the AFFF Contamination released into the environment from its manufacturing processes, sale, distribution, marketing, use, and disposal practices, including potential releases via air deposition, identify pathways of exposure to natural resources, restore natural resources that have been damaged or impacted by AFFF Contamination, and analyze the impact of AFFF Contamination to drinking water wells, surface waters, stream biota, groundwater, soils, sediments, flora, and fauna, including sportfish and other wildlife consumed by the public, subject to the approval of the State;

C. Statutory penalties, fines, and any other relief available under the Consumer Fraud Act;

FILED DATE: 4/5/2023 5:51 PM   2023L003355

D. Costs (including reasonable attorney fees, court costs, and other expenses of litigation);

E. Prejudgment interest; and

F. Any other and further relief as the Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff, People of the State of Illinois, *ex rel.* Kwame Raoul, Attorney General of the State

of Illinois, demands a trial by jury on all claims herein so triable.

Dated: April 5, 2023

PEOPLE OF THE STATE OF ILLINOIS,
*ex rel.* KWAME RAOUL, Attorney General
of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/Asbestos
Litigation Division

By:

Adam J. Levitt
One of their attorneys

Stephen J. Sylvester (ARDC No. 6282241)
Ellen F. O'Laughlin  (ARDC No. 6207358)
Karen Howard (ARDC No. 6193873)
**OFFICE OF THE ILLINOIS ATTORNEY GENERAL**
ENVIRONMENTAL BUREAU
69 West Washington Street, Suite 1800
Chicago, Illinois  60602
(312) 814-2550
stephen.sylvester@ilag.gov
ellen.olaughlin@ilag.gov
karen.howard@ilag.gov

Adam J. Levitt (ARDC No. 6216422)
Daniel Rock Flynn (ARDC No. 6282876)
Amy E. Keller (ARDC No. 6296902)
Diandra Debrosse Zimmerman*
Anna Claire Skinner*
Special Assistant Attorneys General
Cassandra Hadwen (ARDC No. 6335978)
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor

117

FILED DATE: 4/5/2023 5:51 PM   2023L003355

Chicago, Illinois  60602
(312) 214-7900
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
akeller@dicellolevitt.com
fu@dicellolevitt.com
askinner@dicellolevitt.com
chadwen@dicellolevitt.com

Gregory M. Utter*
Joseph M. Callow, Jr.*
Special Assistant Attorneys General
Sarah V. Geiger*
Collin L. Ryan*
Matthew M. Allen*
Joseph B. Womick*
**KEATING MUETHING & KLEKAMP PLL**
1 East 4th Street, Suite 1400
Cincinnati, Ohio  45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
mallen@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields*
Martin Cunniff*
Special Assistant Attorneys General
**FIELDS HAN CUNNIFF PLLC**
1700 K Street NW, Suite 810
Washington, DC  20006
(833) 382-9816
fields@fhcfirm.com
martin.cunniff@fhcfirm.com

*Motions for admission pro hac vice to be filed*

118